UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID L. BROWN, ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 09-CV-0466-CVE-TLW |
| ) | |
| J.D. EPPLER, RAY WILLARD, JANE DOE, ) | |
| JANET DOE, METROPOLITAN TULSA ) | |
| TRANSIT AUTHORITY, PAUL T. ) | |
| BOUDREAUX, and RICHARDSON ) | |
| RICHARDSON BOUDREAUX, ) | |
| ) | |
|     **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. # 7), Plaintiff's Application for Preliminary Injunction and Declaratory Relief (Dkt. # 6), Plaintiff's Request to Set Hearing on Application for Preliminary Injunction (Dkt. # 13), and Plaintiff's motion to expedite ruling on Dkt. # 13 (Dkt. # 17).[1]

---

[1] Brown sent a letter (Dkt. # 17) to the Court on October 2, 2009 regarding his "long pending request for a hearing" on his motion for a preliminary injunction, which he filed on September 11, 2009. In the letter, Brown suggests that the Court is taking an "inordinate amount of time to have this case set for a hearing." Dkt. # 17, at 1. To date, the Court's mail to the address Brown provided in his complaint has been returned as undeliverable. See Docket Report. Local Rule 5.5(a) states: "All paper shall contain the . . . mailing address . . . of the attorney or pro se litigant. If any of this information changes, the attorney or pro se litigant must notify the Court by filing the form provided by the Clerk . . . . Papers sent by the Court will be deemed delivered if sent to the last known address given to the Court." N.D. Okla. Civ. R 5.5(a). Brown has not filed a change of address with the Court. Brown's letter does not provide an address at which he can be reached, only a telephone number. Dkt. # 17. As the Court does not have a valid address for Brown, one can only hope that Brown receives this ruling on his request for a hearing. Further, the Court reminds Brown that it is his responsibility to provide the Court with a proper address.

Plaintiff David L. Brown, appearing pro se, filed a complaint (Dkt. # 1) on July 17, 2009, alleging that defendants violated and conspired to violate his rights under the U.S. Constitution, federal civil rights laws, and Oklahoma law. Dkt. # 1, at 1. Brown previously filed a similar action in state court, which was dismissed. Id. at 9-10.

Brown's claim arises out of his removal from a City of Tulsa bus on or about April 5, 2007. Brown alleges that defendants J.D. Eppler, Ray Willard, Jane Doe, and Janet Doe (together the employee defendants) are employees of the defendant Metropolitan Tulsa Transit Authority (MTTA). He alleges that the employee defendants and MTTA violated his rights by removing him from the bus and subsequently banning him from all MTTA busses. He also alleges that the MTTA and the defendant employees have an established custom of harassing and intimidating African-American and Native American passengers, and are engaged in a conspiracy to violate his rights. He further alleges that defendant Paul T. Boudreaux[2] and the law firm Richardson Richardson Boudreaux[3] conspired with a state court judge to have his previous case dismissed. The defendants argue that Brown's claims against the employee defendants and MTTA are barred by the doctrine of sovereign immunity and the Oklahoma Governmental Tort Claims Act, OKLA STAT. tit. 51, § 151 et seq. (GTCA). The defendants further argue that Brown's claims against all defendants should be

---

[2]   The complaint sometimes erroneously refers to defendant Boudreaux as "Boudreau."

[3]   The complaint incorrectly identifies this defendant as Richardson and Richardson Law Firm. Dkt. # 1, at 1.

dismissed because they are frivolous, conclusory, and fail to state a claim. Both sides have requested sanctions.[4]

Brown's complaint is replete with legal buzzwords and assertions of violations of all manner of rights. It is sprinkled with curious and irrelevant allegations. For example, Brown accuses defendant Jane Doe of "acting as 'some delirious woman experiencing serious menstrual symptoms,'" Dkt. # 1, at 3, and alleges that "defendants Jane and Janet Doe instead of acting as prudent public servants performing an important governmental function as bus drivers acted as two lesbian lovers," id. at 6. Brown admits that he sent copies of his complaint with the words "Let's see if you can get this judge to dismiss this one as frivolous!!!" and "Merry Xmas" scrawled across the front to defendants Boudreaux and Willard. Dkt. # 12, at 5.[5]   Nevertheless, the Court must construe a pro se plaintiff's pleadings liberally. Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Therefore, the following relevant facts are derived from the complaint and presumed to be true for the purpose of defendants' motion to dismiss.

Brown is an African-American male who resides in Tulsa, Oklahoma. Dkt. # 1, at 1. Defendant MTTA provides public transportation services in Tulsa. Defendants Eppler and Willard

---

[4]  Fed. R. Civ. P. 11(c) states that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." The Court declines to address either side's request for sanctions, each of which was included within a motion to dismiss or a response.

[5]  However, Brown denies sending an extremely offensive greeting card (Dkt. # 7, Ex. C) to defendant Eppler. Dkt. #12, at 5. He states it is mandatory that the Court sanction defendant Boudreaux for filing "explicitly pornographic" materials with the Court. Dkt. # 12, at 2, 6. Presumably, Brown thinks the greeting card is "pornographic" because it uses explicit language and says "J.D. Eppler is a child molester." Dkt. # 7, Ex. 4, at 2-4. The Court will not consider Brown's request at this time. See n.5, supra. The Court does not consider or rely on these materials in ruling on the motion to dismiss, Fed. R. Civ. P. 12(d), but mentions them only to provide background information.

are Caucasian males employed by defendant MTTA. Id. Defendants Jane and Janet Doe are African-American females employed by defendant MTTA. Id. at 1-2. Defendant Boudreaux was the MTTA and employee defendants' attorney in the state court case, and is a member of defendant law firm Richardson Richardson Boudreaux. Id. at 4. On or about April 5, 2007, defendant Jane Doe was driving an MTTA bus on which Brown was a passenger. Id. at 3. She called her supervisor Janet Doe and informed Janet that she was having a problem with Brown. Id. Janet told Brown that if he did not sit down and be quiet she would have Jane remove him from the bus. Id. Jane then threatened to call the police if Brown did not leave. Id. at 3-4. Brown left the bus to avoid arrest. Id. at 4. The next day, Brown called the MTTA to complain about Jane and Janet. Id. Several days later, defendants Eppler and Willard allegedly retaliated against Brown for this complaint by removing him from another city bus. Id. Willard then posted Brown's picture in Tulsa bus terminals and instructed MTTA drivers not to let him on any busses. Id. Brown was never given a reason for being banned, nor an opportunity to contest this action. Id. at 5. Brown filed a lawsuit in state court against the MTTA and employee defendants, which was dismissed.[6] Id. at 9. Brown was not given an opportunity to "present argument in opposition to said dismissal," as a result of Boudreaux's alleged ex-parte communications and conspiracy with the state court judge. Id. at 9-10.

Brown also alleges that MTTA drivers, including Jane and Janet Doe, "routinely and systematically treat black male riders of said buses in an arrogant and boorish manner while said

---

[6] The state court judgment attached to the complaint is a dismissal for lack of jurisdiction. Dkt. # 1, Ex. B, at 13. The Court does not consider or rely upon this dismissal in ruling on the motion to dismiss, Fed. R. Civ. P. 12(d), but mentions it to provide background information.

4

black males are passengers on said city buses." Id. at 6. He also alleges that, pursuant to established MTTA policy, Eppler routinely harasses and intimidates African-American and Native American passengers at the Denver Avenue MTTA bus terminal. Id. at 7. Brown seeks $500,000 in actual damages and $1,000,000 in punitive damages from MTTA and the employee defendants, and $500,000 in actual damages and $1,000,000 in punitive damages from Boudreaux and Richardson Richardson Boudreaux. He also seeks an injunction allowing him access to MTTA busses.

## II.

In considering a motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The claim must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." Id. When deciding whether to grant a motion to dismiss, a court must accept all the well-pleaded allegations as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 592; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). Nonetheless, a court need not accept as true those allegations which are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon

which relief can be based." Hall, 935 F.2d at 1109-10. In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. Twombly, 550 U.S. at 570.

Finally, pro se pleadings must be liberally construed. See Haines v. Kerner, 404 U.S. 519, 520 (1972). For purposes of reviewing a complaint for failure to state a claim, all allegations in the complaint must be presumed true and construed in a light most favorable to plaintiff. Hall, 935 F.2d at 1109; Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988). Pro se complaints are held to less stringent standards than pleadings drafted by lawyers and the court must construe them liberally. Haines, 404 U.S. at 520. Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. Hall, 935 F.2d at 1110. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994).

In addition, the Federal Rules of Civil Procedure require a complaint to contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded. Fed. R. Civ. P. 8(a). A complaint must "give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and . . . apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas, 891 F.2d 1473, 1480 (10th Cir. 1989) (citation omitted).

**III.**

Based on a liberal construction of his complaint, Brown alleges numerous causes of action against the MTTA and employee defendants, including violations of the equal protection, due process, and "privileges and immunities"[7] clauses of the U.S. Constitution, 42 U.S.C. §§ 1983 and 1985, U.S. Department of Transportation regulations, and Oklahoma law.  He alleges violation of the equal protection and due process clauses and 42 U.S.C. §§ 1983 and 1985[8] against Boudreaux and Richardson Richardson Boudreaux.  The Court will address Brown's claims by defendant and by claim, as appropriate.

A.     Federal Claims Against MTTA and Employee Defendants

Brown asserts numerous federal causes of action against MTTA and the employee defendants, including violations of the U.S. Constitution, civil rights laws, and Department of Transportation regulations.[9]  As these claims arise under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, unless an exception applies.  Contrary to defendants' assertion, the GTCA does not bar Brown's federal claims in this case, see U.S. CONST. Art. VI,  nor

---

[7]     The Court is not sure whether Brown intends to allege a violation of the Article IV privileges and immunities clause or the Fourteenth Amendment privileges or immunities clause.  The Court will consider both.  See infra.

[8]     Brown does not mention any specific laws in his "Cause of Action Against Defendants Attorneys" section.  Dkt. # 1, at 9-10.  However, his allegations are best characterized as allegations under 42 U.S.C. §§ 1983 and 1985.  See infra.

[9]     The complaint refers to the employee defendants as "acting under color of state law as employees of MTTA while acting individually and in conspiracy with one another."  E.g., Dkt. # 1, at 2.  Construing the complaint liberally, the Court assumes Brown intends to name the employee defendants in their official and individual capacities.

7

does the doctrine of sovereign immunity.[10]  The Eleventh Amendment and associated doctrine of sovereign immunity[11] deprive the federal courts of jurisdiction to hear certain claims against the states, but not local government units.  See, e.g., Monell v. Dep't of Social Svcs., 436 U.S. 658, 690 n.54 (1978) (noting that "[t]here is certainly no constitutional impediment to municipal liability"); Mt. Healthy School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977).  Therefore, if the MTTA is a "local government unit[ ] which [is] not considered part of the State for Eleventh Amendment purposes," Mt. Healthy, 429 U.S. at 280, the doctrine of sovereign immunity (and Oklahoma's reservation thereof in the GTCA) does not affect the Court's jurisdiction over Brown's claims.

The Court uses four factors to determine whether an entity is "to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend."  Id.; see Steadfast Ins. Co. v. Agricultural Ins. Co., 507 F.3d 1250, 1253 (10th Cir. 2007). First, the Court looks to whether state law identifies the entity as an agency of the state.  Steadfast, 507 F.3d at 1253.  Second, the Court looks to "the autonomy accorded the entity under state law." Id.  Third, the Court looks to "the amount of state funding the entity receives and consider whether

---

[10] Defendants' argument regarding sovereign immunity and the Oklahoma Governmental Tort Claims Act is limited to an assertion that the MTTA and employee defendants are covered by the GTCA and, therefore, "pursuant to the Doctrine of Sovereign Immunity, [are] exempt and immune from liability except as provided by the [GTCA]."  Dkt. # 7, at 2.  Defendant does not explain how the GTCA applies to Brown's federal law claims.  See part III.A., infra.

[11] "Although the express language of the [Eleventh] Amendment encompasses only suits brought against a state by citizens of another state, it has long been settled that the Amendment also bars suit against a state by its own citizens."  Meade, 841 F.2d at 1525.

the entity has the ability to issue bonds or levy taxes on its own behalf." Id. Fourth, the Court looks to "whether the entity in question is concerned primarily with local or state affairs." Id.

The MTTA is a public trust, the sole beneficiary of which is the City of Tulsa. TULSA, OKLA., ORDINANCES tit. 39, ch. 9 (2009); see also OKLA. STAT. tit. 60, §§ 176-80. The City of Tulsa is a municipal corporation. The MTTA is a "political subdivision" of the state, as that term is defined in the GTCA. OKLA. STAT. tit. 51, § 152(10)(d). A municipality is also a "political subdivision" under the GTCA. OKLA. STAT. tit. 51, § 152(10)(a).[12] This suggests that, under Oklahoma law, the MTTA is more akin to a municipality than an arm of the state. See Mt. Healthy, 429 U.S. at 280 (noting that, under Ohio law, "state" did not include "political subdivisions," and that school districts were political subdivisions). The MTTA's general manager reports to a board of trustees appointed by the mayor of the City of Tulsa. See About MTTA, http://tulsatransit.org/about-mtta/ (last visited Oct. 13, 2009). Creation of the MTTA required approval of two-thirds of the membership of the governing body of the City of Tulsa, but no state approval. See OKLA. STAT. tit. 60, § 176(A)(3). The MTTA has authority to issue bonds and other indebtedness for trust purposes, see MTTA Trust Indenture, TULSA, OKLA., ORDINANCES ch. 9, App'x 1, at 7, subject to approval by City of Tulsa officials, see OKLA. STAT. tit. 60, § 176. Finally, the MTTA is primarily concerned with transportation within the City of Tulsa, which is more of a local than a state concern. The Court finds that MTTA is not an "arm of the state" for Eleventh Amendment purposes and, therefore, that it has jurisdiction over Brown's federal law claims. Cf. McIntosh v. Metro. Tulsa Transit Auth., 176 Fed. App'x 932 (10th Cir. 2006) (unpublished)

---

[12]    Municipalities, school districts, counties, and public trusts are included in the GTCA's definition of "political subdivision" without qualification, whereas other entities are included in the definition "for the purposes of the [GTCA] only." OKLA. STAT. tit. 51, § 152(10).

(affirming district court's grant of summary judgment to MTTA on an Age Discrimination in Employment Act claim, and not discussing any sovereign immunity issues).[13]

1.      Claims against MTTA

Once again based on a liberal construction of the complaint, Brown asserts the following federal claims against MTTA: violations of 42 U.S.C. § 1983; violations of the due process, equal protection, and privileges and/or immunities clauses of the U.S. Constitution; and violation of U.S. Department of Transportation regulations.

Section 1983 provides a cause of action against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom.[14] See Monell, 436 U.S. at 694. A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of

---

[13]    Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[14]    "A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." Watson v. City of Kansas City, 857 F.2d 690, 695 (1988). To the extent that Brown asserts claims against the employee defendants in their official capacities, the Court will consider these claims as one with Brown's claims against the MTTA. See id.

10

Cincinnati, 475 U.S. 469, 480, 482-83; see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988).

Brown alleges that MTTA has an "established policy and custom" of harassing and intimidating African-American and Native American passengers at the Denver Avenue bus terminal.[15] Dkt. # 1, at 7. Brown does not specifically allege that he was removed from the bus or otherwise victimized pursuant this policy, but he does allege that the employee defendants routinely treat African-American passengers improperly. This is sufficient to state a claim against MTTA. He also alleges that he requested some type of "avenue to contest the arbitrary and capricious decision of Willard's actions against [him] with other MTTA authorities but said request was ignored and denied." Dkt. # 1, at 5. Brown's allegation that MTTA "authorities" denied him an opportunity to contest his removal logically implicates MTTA policy or policymakers. Read liberally and taking all the factual allegations as true, Brown's complaint alleges an official policy or custom sufficient to state a claim against MTTA under Monell.[16]

A § 1983 plaintiff must also allege an underlying constitutional violation. E.g., West, 487 U.S. at 48. Brown alleges that he was banned from MTTA busses pursuant to a racially

---

[15] It is unclear whether Brown is alleging that the MTTA has a general policy of harassing and intimidating passengers, or whether the policy is to encourage Eppler to do so. Brown alleges: "[A]gents of defendant MTTA acting in an established policy and custom encourage and aide the said J.D. Eppler to unduly harass and intimidate African-American and Native American passengers at the Denver Avenue bus terminal in an attempt to limit vagabonds and passerby (s) at said bus terminal, but in reality wrongfully infringe upon the peace and solicitude of African-American fare paying passengers." Dkt. # 1, at 7.

[16] The Court need not address the issue of whether any of the employee defendants has policymaking authority because it finds that Brown's complaint alleges the existence of an official policy and, therefore, that his equal protection and due process claims survive defendants' motion to dismiss.

11

discriminatory policy. Under the circumstances, this is sufficient to state a claim under § 1983 for an equal protection violation.[17] See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269-70 (10th Cir. 1989) (noting that state of mind, such as racial animus, may be averred generally under the Federal Rules of Civil Procedure). Brown also alleges that he was denied the opportunity to contest Willard's "arbitrary and capricious" actions in banning him from MTTA busses. This is sufficient to state a claim under § 1983 for a due process violation.[18] Brown has not, however, stated a § 1983 claim based on either the Article IV privileges and immunities clause or the Fourteenth Amendment privileges or immunities clause. Brown has no standing to allege a violation of the Article IV privileges and immunities clause because he is a resident of the City of Tulsa. Dkt. # 1, at 1. Further, he makes no allegations that the MTTA discriminates against out-of state residents. Cf., e.g., Baldwin v. Fish and Game Comm'n, 436 U.S. 371, 383 (1978) (discussing when a state may treat in state and out of state residents differently consistent with the privileges and immunities clause). Nor does Brown allege infringement of any rights that "owe their existence to the Federal government, its National character, its Constitution, or its laws." The Slaughter-House Cases, 83

---

[17] Brown has not specifically alleged that he or any other African-American passengers were treated differently than passengers of other races. However, construing the complaint liberally, the Court finds that the gist of his argument is one for discriminatory intent and disparate treatment.

[18] Brown does not allege facts sufficient to support a substantive due process claim, because his removal from MTTA busses or harassment at the bus terminal does not touch upon "matters relating to marriage, family, procreation and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994) (plurality opinion) (comparing the plaintiff's claim to these types of cases). Since the parties have not addressed the issue of whether access to MTTA busses is a liberty or property interest encompassed by the Fourteenth Amendment, Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972), the Court will not dismiss Brown's procedural due process claim at this time.

U.S. 36, 79 (1872). Brown has stated claims against MTTA for § 1981 violations based on the equal protection and due process clauses, but not the privileges and/or immunities clauses.

Brown also alleges that MTTA violated "D.O.T.[19] regulations and procedures," but does not point to any specific regulations or procedures. Dkt. # 1, at 6. The Court will not search the Department of Transportation regulations to find one that MTTA may have violated. Doing so would exceed the Court's responsibility to construe Brown's complaint liberally, and would be assuming the role of his advocate. See Hall, 935 F.3d at 1110. Brown's allegation that MTTA violated some unidentified regulation is too vague to state a claim.

2.  Claims against Employee Defendants

Brown asserts the following federal claims against the employee defendants: violations of 42 U.S.C. §§ 1983 and 1985; and violations of the due process, equal protection, and privileges and/or immunities clauses of the U.S. Constitution.

Brown alleges that the each of the employee defendants was acting "under color of law" when they took the actions mentioned in the complaint. Dkt. # 1, at 2. Read liberally, the complaint alleges that the employee defendants violated his constitutional rights and § 1983 by removing him from busses and otherwise treating him improperly on account of his race.[20] These allegations are

---

[19]  The Court assumes Brown is referring to the U.S. Department of Transportation.

[20]  Brown does not connect each action complained of with his allegations of racism. For example, he states that Jane Doe threatened to have him removed from the first bus for his "refusing to accept and acquiesce to the boorish and arrogant verbal language and abuse from the said Jane Doe." Dkt. # 1, at 3. He alleges that bus drivers routinely use such language towards African-American male passengers, id. at 6, but not that Jane Doe removed him from the bus or treated him differently than other passengers because he was African-American. Though the Court construes his complaint liberally when deciding defendants' motion to dismiss, Brown must prove specific instances of improper treatment at later stages of this litigation.

sufficient to support a §1983 claim based on equal protection. See part III.A.1, supra. Further, Brown alleges that defendant Willard banned him from all busses and refused Brown an opportunity to contest or resolve his grievance. Dkt. 1, at 5. This is sufficient to support a claim against Willard under § 1983 based on a due process violation. See part III.A.1, supra. Brown's complaint does not state a claim based on "privileges and/or immunities." See id.

Brown also asserts claims against the employee defendants under 42 U.S.C. § 1985(3), which provides a cause of action for conspiracy to violate civil rights.[21] A "conspiracy" is an essential element of a § 1985(3) claim, and in order to survive a motion to dismiss, a plaintiff must allege "'either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants.'" Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994) (quoting Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990) (discussing elements of a §1985(2) claim, which has an equivalent conspiracy requirement to §1985(3))); see also Gallegos v. City and County of Denver, 984 F.2d 358, 364 (10th Cir. 1993) (noting that "plaintiff has not established, by either direct or circumstantial evidence, that there was a meeting of minds or agreement among certain of the defendants, discriminatorily motivated, to deprive her of equal protection"). Brown alleges that the defendant employees "acting individually and in conspiracy with each other conspired to violate Plaintiff's civil and constitutional rights." Dkt. # 1, at 2. He alleges that defendants Eppler and Willard removed him from the second bus while "acting in conspiracy and concert with each other." Id. at 4. He characterizes the defendants' actions as

---

[21]   The complaint does not refer to a particular part of § 1985, but based on his allegations, the Court assumes Brown intends to state a claim under § 1985(3). See Phelps, 886 F.2d at 1272 (assuming plaintiff claimed a violation under § 1985(3) because he clearly had not alleged any of the elements of § 1985(1) or (2)).

"conspiratorial." Id. at 7. Despite Brown's repeated use of the term "conspiracy," he fails to allege that any defendant made an agreement with any person to treat him improperly, and fails to allege facts from which such an agreement could be inferred.[22] Mere conclusory allegations of a conspiracy, even by a pro se plaintiff, will not survive a motion to dismiss. See Hall, 935 F.2d at 1110.

B.      State Law Claims Against MTTA and Employee Defendants

Brown alleges that "defendant MTTA as a common carrier had both a statutory and common law duty to instruct and insure its employees (i.e. bus drivers) acted in a proper and courteous manner in the treatment of its passengers" and that "said Jane and Janet Doe and numerous other bus drivers of the MTTA routinely and systematically ignore and breach said common law duty."[23] Dkt. # 1, at 6. Defendants argue that Brown's claims are barred by sovereign immunity and the GTCA. Dkt. # 7, at 2-3. The Court need not determine whether Brown states a cognizable claim under Oklahoma law, because any such claim is barred by the GTCA.

The GTCA makes "the state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions" immune from tort liability, and waives immunity "only to the extent and in the manner provided in this act." OKLA. STAT. tit. 51, § 152.1. Liability under the GTCA is exclusive and in place of all other liability of the state, political subdivision, or employee. OKLA. STAT. tit. 51, § 153. A person

---

[22]    Brown does allege that defendants Jane and Janet doe "acted as two lesbian lovers." Dkt. # 1, at 6. Even taking this allegation as true, it does not support an inference of a conspiracy between the two.

[23]    The Court has pendent jurisdiction over Brown's state law claims. 28 U.S.C. § 1367(a).

may not initiate a suit against a state or political subdivision unless his claim is presented according to OKLA. STAT. tit. 51, § 156 and denied.  OKLA. STAT. tit. 51, § 157.

The MTTA is a public trust, the sole beneficiary of which is the City of Tulsa. See part III.A., supra. It is, therefore, a "political subdivision" under the GTCA. OKLA. STAT. tit. 51, § 152(10)(d). Brown's claims against the employee defendants arise out of the performance of their duties as employees of the MTTA. Those claims are, therefore, against "employees acting within the scope of their employment" under the GTCA. See OKLA. STAT. tit. 51, § 152(11) (defining scope of employment). Brown does not allege that he followed the presentation requirements of the GTCA. Therefore, his state law claims are barred.

C.       Claims against Boudreaux and Richardson Richardson Boudreaux

Brown alleges that defendant Boudreaux "conspired" with the state court judge to have his prior case dismissed.  He alleges that Boudreaux violated "professional rules of ethics by participating in ex parte communications with [the] state judge to convince [her] to dismiss Plaintiff's cause of action without allowing Plaintiff a court hearing or an opportunity to present argument in opposition to said dismissal," and that he "used his personal influence as an attorney to convince said state judge to ignore the law and wrongfully and pre-maturely abort and dismiss Plaintiff's action in state court." Dkt. # 1, at 9-10. Brown does not mention any actions by Richardson Richardson Boudreaux, and, presumably, seeks to hold the firm liable on a vicarious liability theory. Brown does not identify the specific legal bases of his claims, but, liberally construing the complaint, the Court treats his allegations that Boudreaux's actions deprived him of his rights to due process, equal protection, and "rights of access to court" as claims under 42 U.S.C. §§ 1983 and 1985(3).

Brown alleges no facts that would support even the inference of a conspiracy under §1985(3). See part III.A.2., supra. At best, Brown alleges that Boudreaux attempted to convince the state judge to dismiss Brown's case. The Court notes that it was Boudreaux's duty to attempt to convince the state judge to dismiss the case, if such a dismissal was warranted. Brown's "evidence" of the conspiracy is the state judge's dismissal order itself, which Boudreaux allegedly prepared. Dkt. # 1, at 10. The Oklahoma Rules of Civil Procedure specifically provide that a judge may direct counsel to prepare draft orders for the court's signature. E.g., OKLA. STAT. tit. 12, § 696.2(A). None of these allegations supports an inference of conspiracy.

Brown cannot state a claim under §1983 against Boudreaux or Richardson Richardson Boudreaux because neither defendant is a state actor. Brown does not allege that either defendant was acting under color of law, and "private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983." Barnard v. Young, 720 F.2d 1188, 1189 (10th Cir. 1983) (citing Polk County v. Dodson, 454 U.S. 312, 318 (1981)). Further, because Brown's allegations of a conspiracy are insufficient to state a claim, this alleged conspiracy between defendants and the state court judge does transform them into state actors.

If Brown intended to state a claim for violation of Oklahoma ethics rules, he failed to do so in his complaint. Though he mentions "professional rules of ethics," Dkt. # 1, at 9, he does not cite any particular rules that defendants violated. Further, there is no private right of action for a lawyer's violation of Oklahoma ethics rules. See OKLA. STAT. tit. 5, ch. 1, app. 1-A, R. 6.1.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. # 7) is **granted in part** and **denied in part**; it is granted as to Brown's claims against MTTA and the employee defendants based on the privileges and immunities and privileges or immunities

clauses of the U.S. Constitution, 42 U.S.C. § 1985, violations of Department of Transportation regulations, and Oklahoma state law claims, and as to all claims against defendants Boudreaux and Richardson Richardson Boudreaux; it is denied as to Brown's claims against MTTA and the employee defendants based on alleged due process and equal protection violations under 42 U.S.C. § 1983. In other words, the only claims remaining are Brown's claims against MTTA and the employee defendants based on alleged due process and equal protection violations under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that Plaintiff's Request to Set Hearing on Application for Preliminary Injunction (Dkt. # 13) is **granted**; plaintiff's Application for Preliminary Injunction and Declaratory Relief (Dkt. # 6) is set for hearing before the undersigned in Courtroom # 2, Fourth Floor, Page Belcher Federal Building, on the **30th day of October, 2009 at 10:00 a.m.** Plaintiff's motion to expedite ruling on Dkt. # 13 (Dkt. #17) is **moot**.

**IT IS FURTHER ORDERED** that plaintiff must appear for the evidentiary hearing prepared to present evidence sufficient to support his burden of proof for a preliminary injunction, or the preliminary injunction will be denied.

**DATED** this 14th day of October, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT