UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID L. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-0466-CVE-TLW |
| ) | |
| J.D. EPPLER, RAY WILLARD, JANE DOE, ) | |
| JANET DOE, METROPOLITAN TULSA ) | |
| TRANSIT AUTHORITY, PAUL T. ) | |
| BOUDREAUX, and RICHARDSON ) | |
| RICHARDSON BOUDREAUX, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is plaintiff's Application for Preliminary Injunction and Declaratory Relief (Dkt. # 6). Plaintiff David L. Brown seeks a preliminary injunction "restrain[ing] defendants from prohibiting [him] from riding city bus[s]es and further restrain[ing] said defendants and/or their agents from having [him] arrested by the Tulsa Police Department for trespassing should and when [he] boards or rides a city bus." Dkt. # 6, at 2. Brown is an African-American male. The remaining defendants in this case are the Metropolitan Tulsa Transit Authority (MTTA), two Caucasian male employees, J.D. Eppler and Ray Willard, and two unnamed female employees, Jane and Janet Doe (collectively, the employee defendants).

**I.**

Brown filed a complaint (Dkt. # 1) on July 17, 2009. He alleges that he was wrongfully removed from an MTTA bus on April 5, 2007. Dkt. # 1, at 3. He alleges that he filed a verbal complaint with MTTA over the telephone, but nothing was done about the incident. Id. at 4. Then, "within seven days," defendants Eppler and Willard removed him from another bus. Id. Willard

then allegedly put a picture of Brown in two bus terminals and had him banned from all MTTA busses. Id. Brown alleges that defendants acted with discriminatory intent when they removed him from the busses, and that the MTTA has a policy of discriminating against African-American male and Native American passengers. Id, at 5-7. He also alleges that he was given no opportunity to contest being banned from MTTA busses, and that the MTTA and its employees acted "arbitrarily and capriciously." Id. at 5.[1] The complaint listed numerous claims for relief, including violations of the U.S. Constitution, federal civil rights laws, Oklahoma law, and Department of Transportation Regulations. Brown filed his motion for a preliminary injunction (Dkt. # 6) on August 7, 2009.

Defendants filed a motion to dismiss (Dkt. # 7) on August 21, 2009. In an Opinion and Order dated October 14, 2009 (Dkt. # 18), the Court granted defendants' motion in part and denied it in part. The Court dismissed all of Brown's claims except for his claims against MTTA and the employee defendants under 42 U.S.C. § 1983 for equal protection and due process violations. Dkt. # 18. On October 30, 2009, the Court conducted an evidentiary hearing on Brown's motion for a preliminary injunction.

## II.

A preliminary injunction is an "extraordinary equitable remedy designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1225 (10th Cir. 2009) (quoting Univ. Of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). To be entitled to a preliminary injunction, the moving party must establish the following:

---

[1] For the purposes of Brown's motion for a preliminary injunction, the Court is concerned only with Brown's claims for equitable relief. Therefore, his damages claims, including those that would potentially be barred by qualified immunity, are not at issue. Further, his due process claims are not at issue, since his alleged due process injury would not be redressed by the injunction he requested.

2

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001). First, the Court must determine whether the plaintiff seeks a "specifically disfavored" type of preliminary injunction. See Schrier v. Univ. of Colo., 427 F.3d 1253, 1259 (10th Cir. 2005); O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en banc). If an injunction fits into one of these three categories, it must be "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." O Centro, 389 F.3d at 975. The three types of disfavored preliminary injunctions are: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." Id.

Brown's requested injunction is not an O Centro injunction. The status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." SCFC, ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1100 (10th Cir. 1991). "In determining the status quo for preliminary injunctions, [courts look] to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 269 F.3d 1149, 1155 (10th Cir. 2001). In this case, the status quo was Brown's being allowed on MTTA busses. The fact that MTTA may have had a legal right to remove or ban him from busses does not mean that Brown's requested injunction would alter the status quo. See id. (defendant's legal right to refuse to activate new customers was

not the relevant status quo; what mattered was the reality that defendant did activate new customers). Before this controversy, Brown was able to ride the bus. Therefore, he seeks an injunction restoring, rather than altering, the status quo.

An injunction is mandatory, rather than prohibitory, "if the requested relief 'affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.'" Schrier, 427 F.3d at 1261 (quoting SCFC, 936 F.2d at 1099).[2] The Tenth Circuit has determined that an injunction is prohibitory when it does not compel the nonmovant to do something "it was not already doing during the last uncontested period preceding the injunction." Dominion Video, 269 F.3d at 1155; but see Schrier, 427 F.3d at 1260 ("injunctions are not necessarily prohibitory merely because they preserve the status quo"). In this case, Brown's requested injunction is more properly characterized as prohibitory.[3] He wants the MTTA to stop keeping him off of busses. This preliminary injunction would not require the Court to supervise MTTA's activities. Cf Schrier, 427 F.3d at 1261 (preliminary injunction requiring reinstatement of a professor might require supervision). The injunction would not compel the MTTA to do something it was not already doing before this controversy. See Dominion Video, 269 F.3d at 1155. Further, Brown's requested injunction would not require the MTTA "to act in a particular way," SCFC, 936 F.2d at 1099, other than to not ban him from its busses.

---

[2] The Tenth Circuit has recognized that the question of whether an injunction is mandatory or prohibitory "can be vexing," and in many instances, "is more semantical than substantive." Schrier, 427 F.3d at 1260 (quoting O Centro, 389 F.3d at 1006 (Seymour, J., dissenting in part)).

[3] A determination that the injunction is prohibitory works in Brown's favor, as it does not trigger the heightened scrutiny required of a disfavored injunction.

A preliminary injunction is also disfavored when it would "render a trial on the merits largely or completely meaningless." Tom Doherty Assoc., Inc. v. Saban Entm't, Inc., 60 F.3d 27 (2nd Cir. 1995), quoted in Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1247 (10th Cir. 2001). This occurs when the effect of the preliminary injunction, once complied with, cannot be undone. For example, cases involving the live televising of an event scheduled for the day on which the injunction issues, or cases involving the disclosure of confidential information, are cases where issuance of the preliminary injunction would render a trial on the merits meaningless. See Potawatomi Indians, 253 F.3d at 1247-48. This is not such a case. If the Court were to grant Brown's preliminary injunction, there would still be a need for a trial on the merits and a permanent determination of rights. The effects of Brown's requested preliminary injunction would not be irreversible.

Since Brown does not seek a traditionally disfavored type of preliminary injunction, the traditional preliminary injunction analysis applies to his request.[4] As mentioned above, a movant is entitled to a preliminary injunction if he establishes:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

Kikumura, 242 F.3d at 955. "The movant's right to relief must be clear and unequivocal." Id. (quoting SCFC, 936 F.2d at 1096). However, if the movant can establish that the "latter three

---

[4] If the requested injunction were disfavored, the Court would apply the same test but require a stronger showing on the four factors.

requirements tip strongly[5] in his favor," the test is modified, and the movant may satisfy the "substantial likelihood of success on the merits" factor "by showing that questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1255-56 (10th Cir. 2003). Therefore, the best course is to evaluate factors two through four first, and factor one last. See id. ("[b]ecause the appropriate standard for evaluating likelihood of success on the merits depends on whether the other three factors are satisfied, we begin by reviewing the district court's determination that plaintiffs had failed to show irreparable harm").

A.    Irreparable injury

Irreparable harm is injury that is "certain, great, actual 'and not theoretical.'" Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)). "[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Heideman, 348 F.3d at 1189 (quoting Potawatomi Indians, 253 F.3d at 1250) (emphasis in original). The Tenth Circuit has noted, in the context of a First Amendment case, that "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Kikumura, 242 F.3d at 963. It is unclear whether a presumption of irreparable injury applies to all constitutional claims, claims under certain constitutional provisions, or only particular fact situations. See Edmisten v. Werholtz, 287 Fed. App'x 728, 733 (10th Cir. 2008) (unpublished) (not reaching the issue of whether the presumption of irreparable

---

[5]    Some decisions use the word "decidedly" instead of "strongly." E.g., Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003).

injury applied to Eighth Amendment claims because the movant could make a strong showing of irreparable injury under any of the Tenth Circuit's formulations)[6]; cf. Schrier, 427 F.3d at 1266 (determining that plaintiff was not entitled to a presumption of irreparable injury because he failed to demonstrate the requisite likelihood of success on his free speech and academic freedom claims).[7] The Court presumes, for the purposes of his motion for a preliminary injunction only, that an infringement of Brown's equal protection or due process rights is irreparable injury.

B.   Balance of injuries

The Court also presumes, for the purposes of his motion for a preliminary injunction only, that the balance of injuries weighs in Brown's favor. The Court did not hear testimony regarding how MTTA would be injured if Brown's requested injunction were issued, but assumes that no conceivable injury would outweigh harm to Brown's constitutional rights.

C.   Public interest

The Court presumes, for the purposes of his motion for a preliminary injunction only, that this factor weighs in Brown's favor. The public has no interest in Brown's constitutional rights being violated.

---

[6]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[7]   Brown's case is distinguishable from those discussed above. In Schrier, the underlying facts were generally agreed upon. The issue at the preliminary injunction stage was whether those facts constituted a First Amendment violation. In this case, the facts are disputed. Therefore, the presumption is less appropriate. Nonetheless, the Court gives Brown the benefit of the doubt on this issue.

7

D.      Likelihood of success on the merits

Because the Court presumes that the first three factors weigh strongly in Brown's favor, Brown need only show that "questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Greater Yellowstone, 321 F.3d at 1255-56. Even under the modified standard, the movant must show some likelihood of success on the merits to be entitled to a preliminary injunction. Cf., e.g., Dominion Video, 269 F.3d at 1158 (finding that the modified standard was met because there was a legitimate dispute over the interpretation of a contract). In this case, this factor depends on whether there are any facts to support Brown's § 1983 claims. In general, a § 1983 plaintiff must show that he was deprived of a federal right, by someone acting "under color of law." 42 U.S.C. § 1983.

The prerequisites for claims against MTTA and the employee defendants are different. A municipal entity[8] may only be sued for injunctive relief where the allegedly unconstitutional action is taken pursuant to official policy or custom. Monell v. Dep't of Social Svcs., 436 U.S. 658, 690 (1978). "Customs" are practices "so permanent and well settled as to constitute a 'custom or usage' with the force of law."[9] Id. Official policy may be officially adopted or made by those with "final policymaking authority" under state law. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

---

[8]   The MTTA has not argued that it is not a municipal entity for § 1983 purposes. The Court previously denied MTTA's motion to dismiss on sovereign immunity grounds because it is not an arm of the state. See Dkt. # 18.

[9]   The same is true for the employee defendants sued in their official capacities. Monell, 436 U.S. at 690 n.54 ("our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which . . . a local government would be suable in its own name").

Therefore, in order to prevail on his claim for injunctive relief against MTTA, Brown must show one of three things: a written or otherwise memorialized official policy; action taken by someone final policymaking authority; or custom. The policy, action, or custom must also deprive him of his constitutional rights.

Brown need not show an official policy to sue the employee defendants in their individual capacities for injunctive relief. He must show that they were acting "under color of law," but the Court finds this requirement satisfied here, where the employee defendants were acting as employees of the MTTA.[10] See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) ("the ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'") (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)).

Brown must also meet the requirements of an equal protection claim. In this case, he must show that he was subject to a policy that made race-based classifications on its face, or that defendants intended to discriminate against him based on his race.[11] E.g., Hunt v. Cromartie, 526 U.S. 541, 546 (1999); Washington v. Davis, 426 U.S. 229, 239-40 (1976). Disparate impact alone is not an equal protection violation, although discriminatory intent may be inferred from disparate impact. Washington, 426 U.S. at 242.

---

[10] By way of example, an employee defendant would not be acting under color of law if Brown slipped and fell while a social guest in the defendant's house.

[11] The burden would then be on the defendants to show that the classification or treatment satisfied strict scrutiny.

9

The Court finds that Brown provided very little credible evidence at the preliminary injunction hearing tending to show that any defendant discriminated against him based on his race. Brown did not testify that any MTTA employee removed him from a bus because of his race. Brown and Samuel Anthony Hill's (another former bus rider) suggestions or feelings that they had been discriminated against are insufficient to raise "substantial questions" about racial discrimination by MTTA or its employees. Those feelings were not supported by any evidence offered at the preliminary injunction hearing. Brown did not identify any similarly-situated bus passengers who were treated differently than he was. Brown did not identify any official policy or custom of MTTA, nor did he present any evidence from which a policy or custom could be inferred.[12]

The evidence presented at the preliminary injunction hearing tends to show that Brown was banned from MTTA busses for a legitimate, nondiscriminatory reason: that he was disruptive. Willard testified that Brown was banned from the busses because he was disruptive and abusive. The Court finds Willard's explanation plausible, especially given Brown's abusive and combative demeanor in the courtroom, Brown's conviction for being drunk on the bus, and Brown's own admission that he called the driver who removed him from the first bus a "nappy-haired whore."

Based on the evidence presented at the preliminary injunction hearing, the Court finds that Brown has not shown that "questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."

---

[12]   At the hearing, Brown attempted to introduce evidence of an "MTA Circular" and Department of Transportation regulations that he claimed were relevant to his case. The Court has reviewed the official versions of the documents to which Brown referred, and finds nothing relevant to Brown's request for a preliminary injunction.

Greater Yellowstone, 321 F.3d at 1255-56. Because Brown has failed to meet his reduced burden of "substantial likelihood of success on the merits" on his equal protection-based claim, the Court finds that Brown is not entitled to a preliminary injunction lifting his ban from MTTA busses.

**IT IS THEREFORE ORDERED** that plaintiff's Application for Preliminary Injunction and Declaratory Relief (Dkt. # 6) is **denied**.

**DATED** this 6th day of November, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT