# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID L. BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>J.D. EPPLER, RAY WILLARD, JANE DOE, )<br>JANET DOE, METROPOLITAN TULSA )<br>TRANSIT AUTHORITY, PAUL T. )<br>BOUDREAUX, and RICHARDSON )<br>RICHARDSON BOUDREAUX, )<br>)<br>Defendants. ) | Case No. 09-CV-0466-CVE-TLW |

## OPINION AND ORDER

Now before the Court are Plaintiff's Motion of Partial Summary Judgment (Dkt. # 93) and Defendants' Motion for Summary Judgment and Brief in Support (Dkt. # 94). Plaintiff has also filed a Motion to Cite and Sanction Defendants for Aggravated Perjury (Dkt. ## 115, 116), Plaintiff's Motion to Renew Scheduling Order Deadlines (Dkt. # 125), and a Motion for Extension of Time to File Pretrial Disclosures (Dkt. # 127). Defendants have also filed Defendants' Motion to Strike Plaintiff's Motion to Renew Scheduling Order Deadlines (Dkt. # 134) and a response in opposition to plaintiff's motion for extension of time to file pretrial disclosures (Dkt. # 135).

## I.

Plaintiff David L. Brown, appearing pro se, brought suit against defendants J.D. Eppler, Ray Willard, Jane Doe, Janet Doe (collectively, "employee defendants"), Metropolitan Tulsa Transit Authority (MTTA), Paul T. Boudreaux, and Richardson Richardson Boudreaux, alleging that defendants violated and conspired to violate his rights under the United States Constitution, federal civil rights laws, and Oklahoma law. Dkt. # 1, at 1. Brown previously filed a similar action in state

court, which was dismissed. Id. at 9-10. Plaintiff's complaint alleges numerous claims for relief against the MTTA and employee defendants, including violations of: the equal protection, due process, and "privileges and immunities" clauses of the United States Constitution; 42 U.S.C. §§ 1983 and 1985; U.S. Department of Transportation regulations; and Oklahoma law. It also alleges violation of the equal protection and due process clauses and 42 U.S.C. §§ 1983 and 1985 by Boudreaux and Richardson Richardson Boudreaux. The Court previously dismissed all of plaintiff's claims except those under § 1983 for violations of the equal protection and due process clauses of the United States Constitution. Dkt. # 18. The Court denied plaintiff's motion for a preliminary injunction, as well as the remaining defendants' first motion for summary judgment. Dkt. ## 25, 47.

MTTA is a trust created under Tulsa City Ordinance Title 39, Ch. 9, pursuant to the rules governing municipal trusts set forth in OKLA. STAT. tit. 60, §§ 176-80. MTTA is responsible for the operation of municipal buses within Tulsa, Oklahoma. Eppler is currently, and was at the time of the incidents at issue, a security officer for MTTA. Dkt. # 94-3, at 1. Brown alleges that Jane Doe is a female bus driver employed by MTTA, and that Janet Doe is a female employed by MTTA in some supervisory capacity. Dkt. # 1, at 1-2. Willard is, and was at the time of the incidents at issue, the manager of security for MTTA. Dkt. # 94-4, at 1.

The dispute at issue began on or about April 5, 2007. Dkt. # 1, at 3. On that day, plaintiff was walking toward an MTTA bus stop with the intent to ride a bus, and saw a bus approaching. Brown had not yet reached the stop but, in an attempt to make the bus wait for him, held up a bus transfer pass. Dkt. # 94-1, at 17. The bus did not stop, and Brown waited for it to return. When it did, Brown boarded, and asked the driver, Jane Doe, why she had not stopped for him when she

passed him. Id. at 18. Brown says that he told her that other drivers stop for people in that situation, and she responded that she was not like other drivers. Id. Brown claims that he then sat down in the back of the bus and that, without further provocation from him, the driver continued to harass him. Id. at 18-19. He claims that she called her supervisor, Janet Doe, over the bus's radio, and informed her that she was having a problem with a passenger. Janet Doe allegedly then told Brown to "sit down" and "shut up," or she would have him removed from the bus. Dkt. # 1, at 3. Brown claims that he did not say anything more to Jane Doe, but that she continued to speak to him. She stopped the bus soon thereafter and told him that if he didn't get off the bus, she would call the police. Id. at 3-4; Dkt. # 94-1, at 19. Brown left the bus, but called the bus driver a "nappy-haired whore" as he exited. Dkt. # 94-1, at 20. He claims that when he tried to board another bus that afternoon, the driver would not admit him as a passenger. Id. Eppler attests that he was notified of plaintiff's conduct on April 5, 2007, and that plaintiff was intoxicated at the time of his removal from the bus. Dkt. # 94-3, at 1. As a result of the events on April 5, plaintiff was banned from MTTA bus use for approximately thirty days. Id. at 2; Dkt. # 94-4, at 1. Following his removal from the bus in April 2007, Brown made an oral complaint to the MTTA. However, he claims that no action was taken on his behalf. Dkt. ## 1, at 4; 94-1, at 20

Despite the imposition of the thirty-day ban, plaintiff was able at times to ride MTTA buses. Dkt. # 94-5, at 8-9. However, plaintiff was removed from an MTTA bus in May 2007, allegedly for being intoxicated and disruptive. Dkt. ## 94-3, at 2; 94-4, at 2; 94-5, at 9. The timing of the next incident is not clear from the summary judgment record, but at some point after his removal from a bus in May 2007, plaintiff was walking past the downtown bus station. Dkt. # 94-1, at 22. While across the street from the station, he saw Eppler, and began to yell at him. Id. Plaintiff claims that

3

he yelled only that he was going to sue Eppler. Id. Defendants allege that plaintiff was intoxicated, and that he shouted obscenities across the street at both Eppler and Tulsa County Deputy Sheriff Geza Horvath. Dkt. ## 94-1, at 22-28; 94-3, at 2; 94-4, at 1-2. Horvath then left the MTTA premises, walked toward plaintiff, and instructed him to leave the area. Id. at 27. Brown continued to make disparaging remarks to Horvath, including allegations of racism. Id. He says that after he made those allegations, Horvath told him that he was under arrest. Id. Brown ran across the street, but then stopped and was arrested by Horvath. Id. at 29-30. He was charged with public drunkenness, resisting an officer, and breach of the peace. Id. at 31-32; Dkt. # 94-6, at 2-3. Following his arrest, he was permanently banned from all future MTTA bus use. Brown alleges that Willard took a picture of him at the time of his arrest, and posted it around the MTTA bus station. Dkt. # 30, at 19-23.

Both Eppler and Willard attest that the removal of plaintiff from buses in April and May 2007, and the subsequent ban on plaintiff's future use of MTTA buses, was a result of plaintiff's actions, including public intoxication, disruptive behavior, and criminal conduct. Dkt. ## 94-3, at 2; 94-4, at 2. Willard further attests that "[t]he ban o[n] [p]laintiff's future use of MTTA buses was a decision made by MTTA pursuant to MTTA's published and written rules against any fighting, throwing of any objects, pushing, rough or loud behavior or vulgar langauge and pursuant to MTTA's policy to ensure that their customers have a safe and enjoyable ride." Dkt. # 94-4, at 2. Eppler claims that he was not involved in the decision to impose a permanent ban on plaintiff's use of the MTTA buses. Dkt. # 94-3, at 2. Defendants state that "[i]t was not and has never been the policy of MTTA to ban anyone based upon their race." Id.

4

According to plaintiff, he had a conversation with Eppler in July 2008 during which plaintiff asked Eppler how long he was going to be banned from the bus and Eppler told plaintiff to speak to Willard. Dkt. # 94-1, at 37. Brown says he went to the MTTA office in July or August 2008, and that he spoke to Willard. Id. However, he claims that Willard was rude to him, that he was not permitted to make any statements, and that he was told to leave the office. Id. at 38. Willard denies that plaintiff came to his office to discuss the ban. Dkt. # 94-5, at 16. In his complaint, Brown claims that he requested a hearing or other means by which to "contest the arbitrary and capricious" decision to ban him from the bus, but that his request was ignored and denied. Dkt. # 1, at 5. However, defendants claim that while plaintiff orally contested his ban, he "never asked for a hearing or for an alternative method to contest said ban, even though he had ample opportunity to do so." Dkt. ## 94, at 8; 94-1, at 37. Brown filed this lawsuit in July 2009.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court draws "all justifiable inferences," id. at 254, and construes the record in the light most favorable, Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), to the party opposing summary judgment.

**III.**

Brown's sole remaining claims are against MTTA and the employee defendants for due process and equal protection violations under 42 U.S.C. § 1983.[1] Dkt. # 18, at 18. Plaintiff moves for partial summary judgment regarding his due process claim against MTTA. Dkt. # 93. Defendants oppose summary judgment on that claim, and move for summary judgment on that and Brown's other remaining claim. Dkt. # 94.

---

[1] In his response to defendants' motion for summary judgment, Brown says he "anticipates filing in this ca[se] a request that this Court acknowledge a cause of action alleged in the Original Complaint for retaliation for the exercise of constitutional rights. Said pleading will likely be filed within ten or fewer days from the filing of this instant Response." Dkt. # 108, at 9. The Court has received no such request from plaintiff, and will not consider any alleged retaliation issue.

### A. Due Process

"The Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedure." Schulz v. City of Longmont, Colo., 465 F.3d 433, 443 (10th Cir. 2006). When determining whether an individual has been deprived of his due process rights, the Court must consider (1) whether the individual possessed a protected interest giving rise to due process protection, and (2) whether the government afforded the individual an appropriate level of process. Garcia v. City of Albuquerque, 232 F.3d 760, 769 (10th Cir. 2000). Brown claims that he had a protected liberty or property interest in access to public transportation. Dkt. # 93, at 6. He further states that, following his oral complaint to MTTA in April 2007, no "official written documented" action was taken by MTTA officials, he did not receive written notification as to why he was banned from riding MTTA buses, and he was never given a hearing or other means by which to contest the ban, despite his making an "oral request" of MTTA officials that he be allowed to contest or appeal the decision to ban him. Id. at 3-4. Therefore, he argues that he is entitled to summary judgment as to MTTA's violation of his due process rights because he was deprived of a protected interest and was not given the proper process in connection with that deprivation.

Brown claims he has a liberty interest in freedom to travel, live, and work where he pleases, and pursue the livelihood of his choice, as well as a property interest in availing himself of the benefits given to all citizens. Dkt. # 108, at 15. The liberty interests protected by the Due Process Clause are "not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." Board of Regents v.

Roth, 408 U.S. 564, 572 (1972). The "Constitution only protects [the liberty to follow a trade, profession, or other calling] from state actions that threaten to deprive persons of the right to pursue their chosen occupation," and actions that exclude a person from a particular job only are not actionable under the Due Process Clause. Bernard v. United Tp. High School Dist. No. 30, 5 F.3d 1090, 1092 (7th Cir. 1993). Although Brown's inability to travel by bus may have impacted his ability to reach certain job sites, Dkt. # 30, at 28, it did not affect his right to work in any particular field, and the bans therefore did not implicate his liberty interest in employment. Moreover, although the "right of interstate travel has repeatedly been recognized as a basic constitutional freedom," the Supreme Court has not decided whether intrastate travel receives the same protection. See Memorial Hosp. v. Maricopa Cnty., 415 U.S. 250, 255-56 (1974). However, even assuming that it does, "the denial of only one mode of transportation does not violate the right to interstate travel." Baer v. White, No. 08 C 3886, 2009 WL 1543864, at * 7 (N.D. Ill. June 3, 2009)(citing Matthew v. Honish, 233 F. App'x 563 (7th Cir. 2007)). Thus, the bans imposed on Brown did not implicate any protected liberty interests, and the Court's analysis will focus solely on the alleged violation of Brown's property interest when he was banned from use of MTTA buses.[2]

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Roth, 408 U.S. at 576. The Roth Court explained that:

---

[2] The Court interprets Brown's claims to allege two distinct violations of his protected property interest: 1) the initial 30-day ban; and 2) the permanent ban. Both may be assessed for possible violations of a protected interest. See Fuentes v. Shevin, 407 U.S. 67, 84-85 (1972)("The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. While the length and consequent severity of a deprivation may be another factor to weigh in . . . determining the appropriate form of hearing, it is not decisive of the basic right to a prior hearing of some kind.")

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to v[i]ndicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id. at 577-58. State law can create a property interest in a number of ways, including by explicitly creating such a right. Moore v. Middlebrook, 96 F. App'x 634, 638 (10th Cir. 2004)(unpublished).[3] Where state law does not explicitly create a property right, the Court must look to the degree to which the state has restrained the discretion given to the decisionmaker to withhold the right in question. Id. "A benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Gonzales, 545 U.S. at 756.

Whether an individual has a protected property interest in access to public transportation has not been decided by the Tenth Circuit Court of Appeals or any other appeals court, and the question is a close one. See, e.g., Ward v. Housatonic Area Regional Transit Dist., 154 F. Supp. 2d 339, 348 (D. Conn. 2001). To determine whether Brown had a protected interest in access to MTTA buses, the Court must look for "existing rules or understandings that stem from an independent source such as state law." Roth, 408 U.S. at 577-78. Oklahoma state law does not explicitly create a protected interest in access to public transportation. Thus, the Court must look instead to the degree to which

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

9

the state has restrained the discretion that MTTA has to provide the benefit of its services. Moore, 96 F. App'x at 638.

Defendants assert that "MTTA officials are given broad discretion to ban MTTA bus use pursuant to MTTA policies and procedures," Dkt. # 101, at 4, 11, but have provided no evidence by which it is possible to verify the scope of discretion given to MTTA. However, as Brown alleges, MTTA is a "common carrier" under Oklahoma law, which defines that term to mean "[e]veryone who offers to the public to carry persons, property or messages." OKLA. STAT. tit. 13, § 4. "A common carrier must, if able to do so, accept and carry whatever is offered to him, at a reasonable time and place, of a kind that he undertakes or is accustomed to carry." OKLA. STAT. tit. 13, § 5. "A common carrier of persons may make rules for the conduct of his business, and may require passengers to conform to them," if such rules are "lawful, public, uniform in their application, and reasonable." OKLA. STAT. tit. 13, § 43. "[A] passenger who refuses to pay his fare, or to conform to any lawful regulation of the carrier, may be ejected from the vehicle by the carrier." OKLA. STAT. tit. 13, § 45.

Neither party has briefed the question of how the Oklahoma common carrier statute impacts the existence of a protected interest in access to MTTA buses. Instead, in support of his argument that the right to transportation falls squarely within liberty and property interests created by state law, plaintiff relies primarily on Wayfield v. Town of Tisbury, 925 F. Supp. 880 (D. Mass. 1996). Dkt. # 93, at 6-10. In Wayfield, the court held that the plaintiff had a protected interest in access to a local library because "it seems likely that when a state holds out a right to citizens to engage in an activity on equal terms with others, a state-recognized status exists." Id. at 884. The Wayfield court concluded that it was more likely that "library access is intended to be open to all persons who meet

10

prescribed standards than it is treated as discretionary by a supervisory board," and that, therefore, suspension of library privileges involved a protected interest. Id. at 885. Defendants argue that Wayfield is distinguishable because, unlike the claim of entitlement that comes with a library card, Brown had no "license or prior privilege to use public transportation." Dkt. # 101, at 11. Although the parties vigorously debate the implications of Wayfield, the Court does not find the case, based mostly on vague language from a First Circuit opinion regarding a different due process issue, to be persuasive.

More relevant is Ward, where, under facts very similar to this one, another district court found no protected property interest in access to public transportation. 154 F. Supp. 2d at 348-49. In Ward, a pro se plaintiff brought suit against a regional transit district and employees of the district for alleged violations of his due process and other rights stemming from the indefinite suspension of his bus-riding privileges. Id. at 342-345. The defendants claimed that the plaintiff did not have a property interest in access to bus service. Id. at 347. The court agreed, noting that the plaintiff had failed to "point to the existence of any state law which would allow him to assert a property interest in fixed route bus service." Id. at 348. Moreover, because the court found no cases suggesting that the plaintiff could bring a claim against a common carrier for refusing service, it concluded that the plaintiff had no "basis in either statutory law or common law to assert a claim against [the defendant] for denying him bus service based on its designation as a common carrier." Id. at 349. Therefore, it found that the plaintiff had not asserted a protected interest, and was not entitled to any process prior to the suspension of his right to ride the defendant's buses. Id.; see also Royster v. Brown, No. 3:07cv54/MCR/MD, 2007 WL 2376261, at * 1, * 5 n.3 (N.D. Fla. Aug. 14, 2007)(noting that plaintiff was advised "that his interest in public transportation was not a protected

11

liberty or property interest," and that the court had found no cases "in which exclusion from public transportation was held to violate the rider's liberty interests"); Stamm v. New York City Transit Auth., No. 04-CV-2163 (SLT), 2006 WL 1027142, at * 9 (E.D.N.Y. Feb. 7, 2006)(noting that "[p]laintiff has not cited to any cases in which exclusion from public transportation was held to violate the rider's liberty interests" and distinguishing statement in United States v. Madison, 744 F. Supp. 490 (S.D.N.Y. 1990) that removal from a bus could violate a passenger's "liberty interest in interstate travel" in part because the buses at issue were city buses); Rodriguez-Sanchez v. Besner, No. 04-392-LI, 2005 WL 878587, at * 5 (D. Or. April 13, 2005)(holding that intentional exclusion of plaintiff from public transit for a month would not "touch on a fundamental right or rise to the level of other substantive due process violations courts have found"); but see Manbeck v. Katonah-Lewisboro School Dist., 403 F. Supp. 2d 281 (S.D.N.Y. 2005)(noting that, if plaintiff had been legally admitted to school, her argument that she was entitled to a Due Process interest in public transportation "might have merit").

However, while analogous, neither Ward nor other cases cited above involved a state law similar to the Oklahoma common carrier statute. There is no law from either Oklahoma state or federal courts regarding the discretion available to a common carrier in the exercise of its duties. Generally, where "[a] decisionmaker is not required to base its decisions on objective and defined criteria, but instead can deny the requested relief for no reason at all," the State has not created a constitutionally protected interest. Olim v. Wakinekona, 461 U.S. 238, 249 (1983)(internal quotations omitted). In contrast, where a state statute places substantive restrictions on the discretion of a government agency, a property interest is created. Hennigh v. City of Shawnee, 155 F.3d 1249, 1254 (10th Cir. 1998). In other words,

12

> [In] all government benefit/due process cases, the inquiry must focus on the legitimate expectations of the party seeking the government benefit. If the government is afforded broad discretion in conferring the benefit, and articulates reasons for denying the benefit within that discretion, then a plaintiff cannot prevail in establishing a constitutionally protected property interest. However, where the government's discretion is limited by law and the government acts outside that limitation, or where the government's articulated reason for denying the benefit is without basis in law . . . then a plaintiff may assert an entitlement sufficient to support a constitutional claim.

RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 922-23 (2d Cir. 1989)(Garth, J., dissenting). Courts look to whether state law has created an "entitlement for persons qualified to receive them" that may be terminated only "for cause" or based on other specified reasons. Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 11-12 (1978); Goldberg v. Kelly, 397 U.S. 254, 262 (1970).

The Oklahoma common carrier statute falls somewhere between the two poles of absolute discretion and obligation to provide service where passengers meet certain statutory requirements. On the face of the statute, MTTA, as a common carrier, must "accept and carry whatever is offered to [it]." OKLA. STAT. tit. 13, § 5. However, passenger carriers "may make rules for the conduct of [their] business," subject to the requirements that they be lawful, public, uniform in application, and reasonable. OKLA. STAT. tit. 13, § 43. The question is therefore to what extent OKLA. STAT. tit. 13, § 43 alters the entitlement to service set out in OKLA. STAT. tit. 13, § 5. Although it has not considered the question in a hundred years, the Oklahoma Supreme Court has previously recognized that the power of common carriers to make reasonable rules regarding the conduct of their business includes the power to exclude passengers from service. Chicago, R.I. & P. Ry. Co v. Armstrong, 120 P. 952 (Okla. 1911)("While it may be said that by opening the doors to its depots, the [railway] company gives an implied license to any and all persons to enter . . . said license is revocable in its

13

nature . . . . [the] company . . . is not bound to admit to its depot and station grounds those who refuse to obey the company's reasonable rules and regulations, or who are guilty of gross and vulgar habits or conduct, or who make a disturbance, or are turbulent and troublesome, or those under the influence of liquor, who interfere with the agency and employ[ee]s of the company in the discharge of their work, or whose reputation for honesty is bad, and which facts are known to the agents and employ[ee]s at the time"). The language of the statute has not changed in the last century, and it appears that Oklahoma courts would construe the constraints imposed on common carriers regarding rules of conduct to be primarily limited to reasonableness. Such limits on discretion are insufficient to support a property interest. See, e.g., . Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan., 927 F.2d 1111, 1116 (10th Cir. 1991)("the state law's requirement that zoning decisions be reasonable . . . is insufficient to confer . . . a legitimate claim of entitlement").

The freedom of common carriers to make rules regarding the conduct of their business appears to modify the mandate that they accept and carry whatever is offered to it. Although the MTTA lacks the absolute discretion to refuse service to individuals for "no reason at all," there are no substantive limits that dictate a particular outcome where it seeks to exclude a passenger based on violations of its rules of conduct. And while the MTTA's regulations regarding the rules of conduct are not before the Court, whether such regulations exist and in what form is irrelevant for purposes of assessing the constitutional interest. Because the MTTA has the "discretion to change the terms and conditions" of its rules of conduct, Brown had "at best a unilateral expectation" regarding his ability to continue as a passenger of MTTA. Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1200 (10th Cir. 1999). In light of the lack of substantive restrictions on rules that may limit to whom a common carrier extends service, the

14

common carrier statute may be best viewed as an antidiscrimination statute that gives to all individuals the initial opportunity to comply with the carrier's terms of service. See, e.g., Ripley v. Wyoming Med. Center, Inc., 559 F.3d 1119, 1124-25 (10th Cir. 2009)(finding that state statute that state hospitals "shall be open for practice to doctors," but that "hospitals by appropriate bylaws shall promulgate reasonable and uniform rules and regulations covering staff admissions and staff privileges" created at most the right to be considered for admission to hospital medical staffs, and citing with approval Tenth Circuit opinion that found the statute to be "simply an antidiscrimination statute" with regard to the degrees held by professionals). Indeed, common carriers have long been under the obligation to "extend to all without discrimination the use of their services." Cuomo v. Clearing House Ass'n, LLC, 129 S. Ct. 2710, 2725 (2009)(citing Bell v. State of Md., 378 U.S. 226 (1964)). However, a nondiscrimination mandate alone is insufficient to create a protected property interest in a government benefit. Ripley, 559 F.3d at 1124-25. Therefore, individuals cannot claim a "legitimate claim of entitlement" to access to MTTA buses.[4] Hennigh, 155 F.3d at 1254.

Willard attests that the decision to ban plaintiff was "made by MTTA pursuant to MTTA's published and written rules against any fighting, throwing of any objects, pushing, rough or loud behavior or vulgar language and pursuant to MTTA's policy to ensure that their customers have a safe and enjoyable ride." Dkt. # 94-4, at 2. Based on the Court's reading of OKLA. STAT. tit. 13, § 43, MTTA had the power to make such rules, and to exclude from service those who did not comply with them. Whether such rules were "lawful, public, uniform in their application, and

---

[4] The Court previously dismissed plaintiff's claims alleging the violation of Department of Transportation regulations or procedures. Dkt. # 18, at 13. However, even assuming that, as plaintiff alleges, those provisions create a right to a grievance process against MTTA, Dkt. # 30, at 33, it is well-established that the right to process alone, without a mandated outcome, does not create a property right. See Ripley, 559 F.3d at 1124-25.

15

reasonable," and sufficiently spelled out the consequences of plaintiff's behavior, could potentially raise a question as the legality of the rules under state law. However, it does not create a constitutionally protected property interest under federal law. Therefore, summary judgment on Brown's due process claims is granted in favor of defendants.

### B. Equal Protection

Brown also claims that MTTA and the employee defendants violated his rights to equal protection under the Fourteenth Amendment. "The Equal Protection Clause requires the government to treat similarly situated people alike." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1988). Thus, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." Id.

In support of his claim that defendants violated his equal protection rights, Brown alleges that MTTA has an "established policy and custom" of harassing and intimidating African-American and Native American passengers at the Denver Avenue bus terminal, Dkt. # 1, at 7, and that he was banned from MTTA buses due to a racially discriminatory policy. However, while he makes broad accusations of racial bias, he has provided no evidence that would support a claim that he was treated differently than other similarly situated individuals, or that such treatment was pursuant to

a policy or custom on the part of MTTA.[5] Similarly, he has proffered no evidence that would raise a genuine issue of material fact as to disparate treatment on the basis of race by any of the individual defendants.[6] Therefore, there is no genuine issue of material fact as to his equal protection claim, and summary judgment is granted in favor of MTTA as to plaintiff's equal protection claim

**IV.**

Plaintiff has filed a Motion to Cite and Sanction Defendants for Aggravated Perjury (Dkt. # 115). In it, he states that defendants' summary judgment motion and an affidavit by Eppler attached thereto establish that Eppler did not participate in the ban of Brown from MTTA buses. Because Willard testified at the hearing on plaintiff's motion for preliminary injunction that the decision to ban plaintiff was made by Eppler and two other MTTA employees, Brown argues that "there has to be perjury" on the part of Eppler and/or Willard. Dkt. # 115, at 2. He argues that the alleged perjury "constitutes aggravated perjury in contradiction to 18 U.S.D.A.[sic] [§] 1623(a)," and that Eppler and/or Willard should consequently be cited and sanctioned for aggravated perjury,

---

[5]     The only evidence provided by Brown regarding his equal protection claims are: unsupported allegations in his pleadings of racism; a document signed by other citizens who "have been and eyewittnessed [sic] the form of transgression and harassment[,] oppression[,] and forced detention of this security guard [Eppler] at the city bus stop," Dkt. #1, at 12; testimony by Samuel Hill, another African-American man banned from riding the bus, Dkt. # 30, at 52-61; and an affidavit by plaintiff regarding perceived unequal treatment. Dkt. # 113, at 2. At only one point does plaintiff provide an assumed comparison of the treatment of a Caucasian man with that of a similarly situated African-American man. Dkt. # 113, at 3. However, such assumptions by plaintiff are insufficient to raise a genuine issue of material fact as to disparate treatment. Moreover, he fails completely to provide any evidence that Caucasian passengers engaging in conduct similar to his own were not subjected to bans from MTTA buses. Thus, his pleadings are insufficient to raise a genuine issue of material fact as to whether Brown was harassed and banned from MTTA buses because of his race.

[6]     Plaintiff's evidence in this regard again consists of blanket assertions of racial bias, without any supporting evidence or comparison to similarly-situated persons.

or an order to show cause should be issued as to why they should not be charged with aggravated perjury.

Plaintiff's motion cites to 18 U.S.C. § 1623, a criminal statute regarding false testimony, and he asks that Eppler and/or Willard have perjury proceedings instituted against them. He also asks for general sanctions to be imposed against Eppler and Willard. "Perjury occurs when a witness testifying under oath or affirmation gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Flonnory, 630 F.3d 1280, 1287 (10th Cir. 2011). Here, plaintiff has made no showing that Willard's statement at the preliminary injunction hearing that Eppler was involved in the decision to ban plaintiff from MTTA buses was willfully made with the intent to provide false testimony, and that it was not merely the result of confusion or mistake. Minor discrepancies in testimony that may be attributable to mistake do not warrant the extreme sanctions of perjury, and plaintiff's motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion of Partial Summary Judgment (Dkt. # 93) is **denied**; Defendants' Motion for Summary Judgment and Brief in Support (Dkt. # 94) is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Cite and Sanction Defendants for Aggravated Perjury (Dkt. ## 115, 116) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Renew Scheduling Order Deadlines (Dkt. # 125), plaintiff's Motion for Extension of Time to File Pretrial Disclosures (Dkt. # 127), and Defendants' Motion to Strike Plaintiff's Motion to Renew Scheduling Order Deadlines (Dkt. # 134) are **moot**. All other pending motions (Dkt. ## 121, 126, 130) are also **moot**.

**IT IS FURTHER ORDERED** that this is a final order terminating this case and a separate judgment will be entered herewith.

**DATED** this 19th day of April, 2011.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT