| | | |
|---|---|---|
| DAVID L. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.D. EPPLER, RAY WILLARD, JANE DOE, | ) | Case No. 09-CV-0466-CVE-TLW |
| JANET DOE, METROPOLITAN TULSA | ) | |
| TRANSIT AUTHORITY, PAUL T. | ) | |
| BOUDREAUX, and RICHARDSON | ) | |
| RICHARDSON BOUDREAUX, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are Plaintiff's Motion for New Trial And/Or Motion to Re-Consider Order Denying Plaintiff's Motion for Summary Judgment (Dkt. # 142), Plaintiff's Motion to Impose Sanctions Against Defendant's Attorneys Pursuant to Rule 11 (Dkt. # 146), plaintiff's Motion to Re-Consider Previous Court Order Failing to Acknowledge Cause of Action for Retalaiton [sic] for the Exercise of Constitutional Rights (Dkt. # 147), Plaintiff's Amended Motion for New Trial (Dkt. # 150), and plaintiff's Amended Motion to Cite and Sanction Defendant Ray Willard for Perjury (Dkt.# 152), and various briefs in support.

### I.

Plaintiff David L. Brown, appearing pro se, initially brought suit against defendants J.D. Eppler, Ray Willard, Jane Doe, Janet Doe (collectively, "employee defendants"), Metropolitan Tulsa Transit Authority (MTTA), Paul T. Boudreaux, and Richardson Richardson Boudreaux, alleging that they violated and conspired to violate his rights under the United States Constitution, federal civil

rights laws, and Oklahoma law. Dkt. # 1, at 1. Brown previously filed a similar action in state court, which was dismissed. Id. at 9-10.

Plaintiff's complaint alleges numerous claims for relief against the MTTA and employee defendants, including violations of: the equal protection, due process, and "privileges and immunities" clauses of the United States Constitution; 42 U.S.C. §§ 1983 and 1985; U.S. Department of Transportation regulations; and Oklahoma law.[1] It also alleges violation of the equal protection and due process clauses and 42 U.S.C. §§ 1983 and 1985 by Boudreaux and Richardson Richardson Boudreaux. A detailed statement of the facts underlying plaintiff's claims is set out in the Court's opinion and order on summary judgment (Dkt. # 136).

The Court initially dismissed all of plaintiff's claims except those against MTTA and the employee defendants for violations of the equal protection and due process clauses of the United States Constitution. Dkt. # 18. The Court denied plaintiff's motion for a preliminary injunction, as well as the remaining defendants' first motion for summary judgment. Dkt. ## 25, 47. Plaintiff then filed a motion for partial summary judgment (Dkt. # 93), as well as a motion to sanction defendants for perjury (Dkt. # 115) and several motions regarding the discovery process (Dkt. ## 125, 127). The remaining defendants also filed a motion for summary judgment (Dkt. # 94), and a motion to strike one of plaintiff's discovery motions (Dkt. # 134). On April 19, 2011, the Court entered an opinion and order (Dkt. # 136) granting defendants' motion for summary judgment, denying plaintiff's motion for partial summary judgment, and finding all other pending motions moot. Judgment was entered the same day. On May 17, 2011, plaintiff filed a notice of discharge of his

---

[1]     Plaintiff argues that his complaint also states a claim under § 1983 for retaliation. See III.D., infra.

attorney and motion to return to pro se status[2] (Dkt. # 141), which was granted.  The motions now before the Court followed.

## II.

Despite their varying titles and requests for relief, the Court considers all of plaintiff's motions, other than the motion for sanctions against defense counsel, as part of his motions for new trial (Dkt. ## 142, 150), which seek relief under Fed. R. Civ. P. 59(e).  Plaintiff's first motion for new trial was filed within 28 days of entry of judgment, Adams v. Reliance Standard Life Ins. Co., 225 F.3d 1179, 1186 n.5 (10th Cir. 2000), and the Court granted permission for plaintiff to file an amended motion for new trial (Dkt. # 145).  Therefore, plaintiff's motions are timely.  Under Rule 59(e), a party may ask a district court to reconsider a summary judgment ruling when the district court has "misapprehended the facts, a party's position, or the controlling law."  Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  Reconsideration is "not available to allow a party to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument."  FDIC v. United Pac. Ins. Co., 152 F.3d 1266, 1272 (10th Cir. 1998)(quoting Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)).

---

[2]      Although Brown began this case pro se, he was represented by Walter M. Benjamin from October 21, 2010 to May 17, 2011.  See Dkt. # 80.

# III.

Brown's motions set out a litany of grounds that he claims justify a new trial. He states that because the "Court committed numerous errors of law and further applied the wrong legal standard in denying [his] request for a partial summary judgment, and dismissing this case," the judgment should be reconsidered and set aside. Dkt. # 142, at 1. Specifically, Brown argues that the Court erred by: concluding that Willard did not commit perjury; making erroneous factual findings; failing to consider facts alleged in his "motion to deem admitted"; failing to consider his claim for retaliation; erroneously concluding that he did not have a protected liberty interest in access to public transportation; relying in part on century-old decisions of the Oklahoma Supreme Court for its denial of his due process claims; and granting summary judgment in favor of defendants on his equal protection claim.[3] Dkt. # 142, at 1-4. In his amended motion for new trial, Brown added an argument that the Court's refusal to follow Wayfield v. Town of Tisbury, 925 F. Supp. 880 (D. Mass. 1996), was improper, and that a property right of access to public transportation is recognized under Oklahoma law.[4] Dkt. ## 150, at 1; 151, at 3. He also filed separate motions to reconsider the Court's previous failure to acknowledge a cause of action for retaliation (Dkt. # 147), to cite and

---

[3]    Brown also argues that the Court erred in failing to grant his request for a preliminary injunction. Dkt. # 142, at 4. The Court's opinion and order denying that request was entered November 6, 2009. Dkt. # 25. Brown appealed that decision, Dkt. # 27, and his appeal was dismissed for lack of prosecution. Dkt. # 52. The Court will not consider any arguments related to its denial of plaintiff's motion for a preliminary injunction.

[4]    In addition, Brown argues that the Court's dismissal of his 42 U.S.C. § 1985 conspiracy claims was improper. Dkt. # 150, at 2. He did not "submit argument and authorities" on that issue, but reserved his right to do so in the event of an appeal. Id. Parties are not required to "reallege a cause of action on which the district court has conclusively ruled," Davis v. TXO Prod. Corp., 929 F.2d 1515, 1518 (10th Cir. 1991), and the Court will not address any argument regarding Brown's § 1985 conspiracy claim, which was dismissed on October 14, 2009, and which played no part in the Court's opinion at the summary judgment stage.

sanction Willard for perjury (Dkt. # 152), and to impose sanctions on Boudreaux and Melissa Herr of the law firm Richardson, Richardson & Boudreaux (Dkt. # 148). Brown's arguments on most of these grounds are fragmented among his two motions for new trial and briefs in support, as well as the separate motions he filed. However, as stated, the Court construes all of the motions except that for sanctions against defense counsel as seeking relief under Rule 59(e).

## A.

Brown reiterates his argument made on summary judgment that Willard gave false testimony at the preliminary injunction hearing, and that he should be sanctioned. Dkt. ## 143, at 10; 153. Brown claims that his former attorney inaccurately argued at the summary judgment phase that either Willard or Eppler committed perjury, when in fact it was only Willard who did so, and cites inconsistencies in the record as evidence. Dkt. # 153. The Court already determined that plaintiff failed to show that any statements by Willard made at the preliminary injunction hearing, if incorrect or untrue, were willfully made with the intent to provide false testimony, and were not merely the result of confusion or mistake. Therefore, it concluded that charges of perjury were not warranted. Dkt. # 136, at 17-18. Plaintiff has not pointed to any new facts or law in support of his argument, but instead merely reiterates the arguments made at the summary judgment stage. Plaintiff's motion to sanction Willard for perjury is not a proper use of Rule 59(e) relief, and his motion for sanctions and a new trial based on the Court's prior failure to cite and sanction Willard is denied.

## B.

Plaintiff also claims that the Court made erroneous factual findings. He argues that all factual findings based on Willard's testimony were improper, because Willard, the alleged perjurer, lacked credibility. Brown's other objections to the Court's factual findings appear to center on the

5

timing of the imposition of his ban from MTTA buses, the details regarding his removal from MTTA buses, and the parties responsible for the decision to ban him from the buses. Dkt. # 143, at 5-9. Brown concludes by stating that the "Court's conclusion [that] defendants['] ban of [p]laintiff was justified is not established in the Record." Id. at 9.

The Court does not find that plaintiff's allegations of error warrant any change to its prior opinion and order. Plaintiff does not raise "new evidence previously unavailable." Instead, he simply reargues his position on the facts as they existed in the summary judgment record. Moreover, plaintiff's argument misinterprets the Court's opinion and order on summary judgment. The Court found that, as a matter of law, plaintiff had no protected interest in access to public transportation. It did not conclude that the ban of plaintiff was justified, but rather that it did not give rise to a viable due process claim. Dkt. # 136, at 15-16. Therefore, evidence as to the timing of the bans, Brown's removal from MTTA buses, and the decisionmakers responsible for the bans played no part in the Court's decision. The same is true of plaintiff's contention that the Court's factual findings were improper where based on testimony from Willard. Dkt. # 143, at 10-11. The allegedly perjured testimony by Willard as to who made the decision to ban plaintiff from the bus did not form the basis for the Court's opinion, and the Court does not find that plaintiff's allegations of perjury tainted the reliability of all testimony by Willard. Plaintiff's motion for new trial on the basis of erroneous factual findings is denied.

## C.

Brown claims that the Court erred in failing to consider facts alleged in plaintiff's "motion to deem admitted" (Dkt. # 121). The parties engaged in numerous discovery disputes, and Brown has not presented any new evidence regarding those disputes. Instead, he apparently requests that the Court revisit its prior decision. That is an improper use of Rule 59, and the Court does not find that its failure to grant plaintiff's "motion to deem admitted" constituted manifest error, or that it warrants a new trial.

## D.

Brown also argues that the Court erred in not recognizing a separate claim for relief in his complaint for retaliation under 42 U.S.C. § 1983, and asks the Court to reconsider its decision on the motion to dismiss that dismissed all but plaintiff's due process and equal protection claims. Dkt. ## 147, 149. Brown's complaint was filed July 17, 2009. Dkt. # 1. In it, he made a number of allegations, including that after he filed a verbal complaint with MTTA, he "was harassed and retaliated against by the said J.D. Eppler and Ray Willard and again within seven days after his initial wrongful removal from said bus was again wrongfully removed from another city bus . . . [and] defendant Ray Willard thereafter engaged in conduct to have [p]laintiff wrongfully banned from riding all public buses within the City of Tulsa . . . ." Dkt. # 1, at 4. He further alleged that "defendant Willard's sole reason for acting in a wrongful, illegal, discriminatory, and conspiratorial manner in having [p]laintiff banned from riding all buses within the City of Tulsa was in retaliation for [p]laintiff having filed a verbal complaint over the telephone regarding the boorish and arrogant actions of the said Jane and Janet Doe . . . ." Id. at 5. He then claimed that the defendants' action in banning plaintiff from the use and access to city buses was "an arbitrary, capricious, and

discriminatory action which violated [p]laintiff's rights to due process of law, equal protection of law, and the privileges and immunities clause of the United States Constitution." Id. He did not state directly that he intended to assert a cause of action based on retaliation.

On October 14, 2009, the Court entered an Opinion and Order granting in part and denying in part defendants' motion to dismiss. Dkt. # 18. The Court granted the motion to dismiss as to Brown's claims against MTTA and the employee defendants based on the privileges and immunities clauses of the U.S. Constitution, 42 U.S.C. § 1985, violations of Department of Transportation regulations, and Oklahoma state law claims, and as to all claims against defendants Boudreaux and Richardson Richardson Boudreaux. Id. at 18. It denied the motion to dismiss as to Brown's claims against MTTA and the employee defendants based on alleged due process and equal protection violations under 42 U.S.C. § 1983. Although the Court acknowledged that "defendants Eppler and Willard allegedly retaliated against Brown for [his] complaint by removing him from another city bus," Dkt. # 18, at 4, it did not address whether plaintiff's complaint contained a separate cause of action for retaliation. Brown subsequently moved to amend his complaint to allow him to obtain the names of Jane and Janet Doe. Dkt. ## 34, 42. He did not request leave to make any other amendments to his complaint. The Court granted the motion to amend for the limited purpose of adding the names of Jane and Janet Doe, Dkt. # 47, but he did not file an amended complaint.

In January 2011, the parties filed cross-motions for summary judgment. Dkt. ## 93, 94. In response to defendants' motion, Brown stated that he "anticipate[d] filing in this ca[se] a request that this Court acknowledge a cause of action alleged in the Original Complaint for retaliation for the exercise of constitutional rights. Said pleading will likely be filed within ten or fewer days from the filing of this instant Response." Dkt. # 108, at 9. And in response to defendants' asserted defense

of qualified immunity, Brown asked that the Court "defer any ruling on the issue . . . pending the filing of [p]laintiff['']s motion requesting the court acknowledge an over-looked stated claim of 'retaliation for the exercise of constitutional rights' against both defendants Eppler and Willard." Id. at 14. However, Brown never filed a request to amend to state a retaliation claim, and the Court did not consider any alleged retaliation issue on summary judgment. Dkt. # 136, at 6 n.1.

Brown has had nearly two years in which to raise the Court's allegedly improper oversight of the retaliation claim in his complaint. However, he now claims that the allegations in his complaint and the undisputed facts in the record "clearly set forth and establish a separate and distinct cause of action against defendants for retaliation for the exercise of a constitutional right," in violation of his substantive Due Process rights. Dkt. # 147, at 1-2. Plaintiff's argument is untimely. "A Rule 59(e) motion 'cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment.'" Jordan v. Wiley, 411 F. App'x 201, 212 n.9 (10th Cir. 2011)(unpublished).[5] Moreover, even if the Court had construed plaintiff's arguments to raise the retaliation issue at the summary judgment stage, it would have granted summary judgment in favor of defendants.

"Any form of official retaliation for exercising one's freedom of speech . . . constitutes an infringement of that freedom." Rocky Mountain Rogues, Inc. v. Town of Alpine, 375 F. App'x 887, 896-97 (10th Cir. 2010)(unpublished)[6](citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)). To succeed on a First Amendment retaliation claim against a non-employer, a plaintiff must

---

[5]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

[6]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

prove: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's actions were substantially motivated to respond to his exercise of the constitutionally protected activity.  Id.  Plaintiff's complaint alleges that he made a telephone complaint to MTTA about the conduct of one of its drivers, and he was subsequently banned from MTTA buses for having made that complaint.

However, even assuming that plaintiff's telephone complaint to MTTA was constitutionally protected activity and that a temporary or permanent ban from public transportation would chill a person of ordinary firmness from making such complaints, there is no genuine issue of material fact as to whether defendants' actions were "substantially motivated to respond to his exercise of the constitutionally protected activity."  Id.  Defendants could have been substantially motivated by Brown's telephone complaint only if they knew it had been made.  See Duran v. City of Corpus Christi, 160 F. App'x 363, 366 (5th Cir. 2005)(unpublished).[7]  Combing the summary judgment record, the Court finds Brown failed to raise a genuine issue of material fact as to Willard or Eppler's knowledge of his telephone complaint to MTTA.

In support of his motion to reconsider, Brown argues that "[t]he evidence in this cause is clear said complaint/grievance was pending and unacted upon at the time Willard and Eppler began their retaliatory actions against [p]laintiff – which actions occurred immediately after the lodging of said complaint.  Thus there is no issue of causation in regards to the claim of retaliation, as it is clear that 'but for' [p]laintiff having filed a complaint against Jane and Janet Doe, Willard would

---

[7]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1; 10th Cir. R. 32.1.

not have begun his conspiratorial actions to have [p]laintiff banned from having access to MTTA buses." Dkt. # 149, at 8. However, beyond his blanket assertion of a causal link between his complaint and subsequent ban, Brown has neither alleged nor provided any evidence of knowledge on the part of Willard or Eppler[8] of his complaint.

Excerpts of Brown's deposition transcript were provided in support of defendants' motion for summary judgment. Dkt. # 94-1. In that deposition, Brown testified about complaints he made to MTTA prior to April 5, 2007, about the oral complaint he made the day after his removal from a bus on April 5, 2007, and about his familiarity with MTTA's grievance policy. Dkt. ## 94, at 6-9; 94-1, at 8-9, 11, 20; 94-5, at 4-5. Brown says he made the complaint of April 6, 2007 to Keith Cone, an MTTA employee and Brown's cousin. Nowhere in the excerpted transcript does Brown state that knowledge of his complaint reached Willard or Eppler. And in response to a question about the basis for his suit, Brown stated that he "was banned from riding the bus because of [his] race," an allegation he made based on "information [he] received saying that Mr. Willard and a Bill Cartwright are prejudiced against black people." Dkt. # 94-1, at 33. When asked if he had "any other proof or evidence" that he was "banned from the bus based upon [his] race and not for any other reason," Brown responded "yes," and cited the failure of the MTTA to follow Federal Transit Administration guidelines and regulations. Id. at 33-34. He stated that those guidelines required the MTTA to "set forth a procedure for an individual to file a grievance or complaint of discrimination against transit employees," and said that, according to Willard, the MTTA had not set up such a procedure. Id. at 34. When asked if he had "any other facts or information or evidence in proof of

---

[8]    Brown's statements regarding alleged retaliation refer to both Willard and Eppler, and the Court will evaluate evidence of knowledge on the part of either man.

your allegation that you were banned from the bus based upon your race other than what you've testified about?," Brown responded, "[o]ther than what I've testified, no." Id. at 35. Plaintiff assigned no blame for the ban to his April 6, 2007 complaint.

Brown also described the complaint to MTTA at the hearing on plaintiff's motion for preliminary injunction. Dkt. # 94-5, at 4. He said that he gave a recorded statement to Cone, and that when, "[a] couple of days later[,] [he] was not allowed to ride" a bus, he "knew then that they had beg[un] to attempt to have [him] banned . . . ." Id. at 8. When asked about Eppler's involvement, Brown stated that Eppler was made a defendant to the lawsuit "[b]ecause he and Mr. Willard subsequently removed me from a bus at the Denver Avenue bus terminal [in May 2007] after I had filed a grievance." Id. at 9. Brown called Willard as a witness, and asked him whether he was "aware . . . that [Brown] filed a grievance against the MTTA." Willard responded, "no, sir."[9] Id. at 22. Brown also asked Willard about the procedure for filing a grievance against an employee of the MTTA. Id. at 22. Willard responded that he knows that "if a person has a complaint, they [sic] can call the call center. The call center person there, the CSR, will take the complaint over the phone, forward it to the supervisor that handles the complaints." Id. at 23. The Court asked Willard whether he received a complaint from Brown, and Willard responded that he had not, because he

---

[9]     In his brief in support of his motion to reconsider the retaliation claim, Brown states that the testimony of Willard at the preliminary injunction hearing "clearly shows that in April and May 2007 defendants began retaliatory actions against [him] because they were aware he had filed a grievance with MTTA, as shown by the following testimony from the prevaricating witness at said hearing: . . . ." Dkt. # 149, at 5. He then quotes an exchange from the hearing in which Willard discusses why Brown was banned, and whether there was a policy in place at MTTA to impose such a ban. Id. Brown does not point to any testimony regarding Willard's knowledge of Brown's call to MTTA, and he does not address the more relevant exchange where Willard denies any such knowledge.

was not the "supervisor that cares for them." Id. He claimed to have no personal knowledge of any complaint made by Brown. Id. Brown did not question him further about any such knowledge.

The Tulsa Transit Feedback Policy appears to outline the procedure used by MTTA to process complaints. Dkt. # 94-8. The policy states that once a complaint is made, it is reviewed by a Quality Assurance Supervisor, and, if follow-up is requested, the Operations Quality Assurance Supervisor contacts the individual. Id. at 1-2. It also states that "[t]he Director of Operations and/or General Manager will review the feedback, responses, and timeliness of the completion of feedback on a periodic basis." Id. at 2. A separate process exists for claims based on discrimination, and such claims are responded to by the Quality Assurance Supervisor or Operations Dispatch Department, as well as the Title VI Officer. Id. at 3-4. On a monthly basis, complaints are reported to the General Manager, Assistant General Manager, Director of Operations, and Title VI Officer. Id. at 4. Willard is the Manager of Security for MTTA. Dkt. # 94-4, at 1. He testified that his responsibilities include supervision of the security staff, video documentations, detours for Tulsa Transit buses, and "[j]ust about anything [his] supervisor wants [him] to do." Dkt. # 94-5, at 15. Eppler is a Security Officer for MTTA. Dkt. # 94-3, at 1. Neither Eppler nor Willard holds a position in the reporting chain described in the Tulsa Transit Feedback Policy.

In Brown's response in opposition to defendants' motion for summary judgment, he stated that the first significant involvement of Eppler in matters concerning Brown occurred when both Willard and Eppler ordered plaintiff to get off a bus approximately two weeks after the April 5, 2007 event. Dkt. # 108, at 3. This alleged event occurred at least a week after the first instance when plaintiff says he knew he had been banned from the bus. See Dkt. # 94-5, at 8. Brown argued that "Willard and other MTTA agents are likely to retaliate against any individual who does file such a

13

grievance as [p]laintiff alleges was clearly done by Willard against [p]laintiff in this situation." Dkt. # 108, at 7. He claimed that "[i]t is clear from the facts in this case both Eppler and Willard's reason for removing [him] from the MTTA bus . . . and all of Willard's and MTTA's subsequent actions in banning [him] from riding city buses were done in retaliation for [Brown] having filed grievances[10] over the telephone pursuant to MTTA procedures." Id. And he further argued that it is "clear [that] MTTA officials . . . can also have a person permanently banned from having access to MTTA buses if said individual exercises his First Amendment right under the U.S. Constitution to file a grievance or complaint about actions of a governmental entity as was so done by Willard to [p]laintiff in this instant action." Id. at 19. However, plaintiff pointed to no evidence regarding Willard's knowledge of his complaint or that would support a finding of retaliatory motive. In his affidavit in support of his response in opposition, Brown stated that he has filed "grievances over the telephone pursuant to MTTA policies to make legitimate complaints concerning problems I have had with MTTA employees while attempting to use MTTA services for public transportation," but that "the majority of complaints and grievances filed by individuals with MTTA are totally ignored and seldom do any MTTA agents respond or reply to said grievance."[11] Dkt. # 113, at 1.

---

[10] Although the entire transcript of Brown's deposition was not provided to the Court, Brown appears to have testified that he made only one complaint to MTTA in response to the April 5, 2007 incident. Dkt. # 94-1, at 21.

[11] Brown also claims that prior to his arrest by Tulsa County Deputy Sheriff Geza Horvath in May 2008, he "had previously a couple of weeks prior to the arrest made a 911 call to the Tulsa Police Dep[artment]. To complain of both Eppler and Horvath harassing me while at the bus station. . . . The next time I saw Eppler he asked me and informed me that he and Horvath were both aware I had called the police on them to complain about them. Eppler further asked me why had I called the police on them?" Id. at 4. However, these facts are irrelevant because plaintiff's allegations of retaliation are based on the call he made to the MTTA, not to 911.

Brown's assertions of a causal connection between his telephone complaint and his ban from MTTA buses are not supported on the record, and the Court does not find a genuine issue of material fact as to whether the telephone complaint "substantially motivated" his ban from the bus. Brown does not allege facts upon which a reasonable factfinder could determine that Willard or Eppler were aware of the complaint Brown made to MTTA on April 6, 2007. See Duran, 160 F. App'x at 366. Moreover, nowhere in the summary judgment record does Brown ever claim that Willard or Eppler knew of his complaint, or provide an explanation for how they would have come by such knowledge.[12] No inference of knowledge is supported by the MTTA policy provided to the Court, as it does not channel complaints to the positions held by Willard and Eppler. Further, Willard denied any knowledge of the complaint, and Brown presented no evidence to contradict that denial.

Although, on a motion for summary judgment, the facts are construed in the light most favorable to the nonmoving party, the nonmoving party still has an obligation to put forth evidence on which the trier of fact could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). On the summary judgment record, there are factual issues as to the circumstances surrounding the ban of Brown from MTTA buses. And it is undisputed that he made a complaint to MTTA by telephone following his removal from an MTTA bus on April 5, 2007. Dkt. ## 94, at 7; 109, at 2. However, Brown proffered no evidence beyond conclusory statements of a causal connection between the two. Thus, the Court does not find evidence in the record from

---

[12]     Brown argues that he established a causal connection based on an affidavit in which he attests that, prior to the April 5, 2007 incident, he made calls to MTTA, and that Willard knew of those calls. Dkt. ## 113, at 2; 149, at 10. However, in addition to alleging knowledge on the part of Willard without support, Brown's allegations regarding retaliation were based only on his call made after the April 5, 2007 incident. Thus, other calls that he had made to MTTA are irrelevant without a showing that Willard was aware of the April 6, 2007 complaint.

which a reasonable factfinder could find that the ban of Brown from MTTA buses was based on retaliatory motive. Worrell, 219 F.3d at 1213-14. Even if Brown had properly placed this issue before the Court on summary judgment, the Court would have resolved the question in favor of defendants.[13] Plaintiff's Rule 59 motion on the retaliation claim is therefore denied.

## E.

Brown also argues that the Court erred in finding that he did not have a constitutional right to intrastate travel under the substantive component of the Due Process Clause. Dkt. # 151, at 6-9. "Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998). Brown has not previously characterized his claim as one based on substantive due process.[14] And upon review of the pleadings, the only statement that can be interpreted as asserting a claim based on anything other than a right to procedural due process is a heading that says, "plaintiff and/or any American citizen has a property or liberty interest in

---

[13]   Any argument that the summary judgment record was not fully developed on this issue because of the Court's prior failure to recognize plaintiff's retaliation claim is unavailing. Plaintiff cannot suggest the possibility of alternate grounds for relief in his response in opposition to summary judgment, fail to present his argument on that ground, and then claim, after judgment has been entered, that the Court ought to have considered other evidence. Brown was represented by counsel at the summary judgment stage. Although he now blames that counsel for a failure to file the relevant motion to amend regarding the retaliation claim, dissatisfaction with the performance of counsel does not justify a new trial.

[14]   See, e.g., Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief, Dkt. # 108, at 12-13 (defending against defendants' motion for summary judgment on plaintiff's due process claim on procedural due process grounds only).

access to use of public tranportation [sic] protected by the Due Process Clause from arbitrary deprivation." Dkt. # 108, at 14.

However, even if he had properly raised the argument that his ban from MTTA buses violated his substantive due process right to intrastate travel, the Court would have rejected that claim for the reasons outlined in its Opinion & Order on summary judgment. See Dkt. # 136, at 7-8. Substantive due process protection depends on the existence of "fundamental rights and liberties," a more demanding standard than that for liberty interests under the procedural due process clause. Brown v. Cooke, 362 F. App'x 897, 898 (10th Cir. 2010)(unpublished).[15]  In the context of plaintiff's asserted liberty interest in connection with his procedural due process claim, the Court noted that "although the right of interstate travel has repeatedly been recognized as a basic constitutional freedom, the Supreme Court has not decided whether intrastate travel receives the same protection." Id. (quoting Memorial Hosp. v. Maricopa Cnty., 415 U.S. 250, 255-56 (1974)). Consequently, there is little established law on what protections are entailed in the fundamental right, if any, to intrastate travel.  However, assuming that such a right exists, courts have found it to be "correlative to the right to interstate travel," and, therefore, to "consist of a right to travel locally through public spaces and roadways." Doe v. Miller, 405 F.3d 700, 713 (8th Cir. 2005). However, "the denial of only one mode of transportation does not violate the right to interstate travel." Dkt. # 136, at 8.  The Court finds no reason to extend the right to intrastate travel beyond the scope of interstate travel to find a fundamental right to a particular mode of transportation.  "As a general rule, courts must be reluctant to expand the concept of substantive due process . . . ."

---

[15]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

<u>Willis v. Town of Marshall, N.C.</u>, 426 F.3d 251, 265-66 (4th Cir. 2005).  While the Constitution of the United States of America may protect Brown's fundamental right to travel freely within the state of Oklahoma, he cannot rely upon it to assert a fundamental right to travel in whatever manner he prefers.  The Court does not find a manifest error of law on this issue, and plaintiff's motion on that ground is denied.

## F.

Plaintiff also argues that:

> [The] Court's reliance upon archaic and ancient decisions of the Oklahoma Supreme Court in attempting to justify its illogical reasoning and conclusion that a person has no property and liberty interest in access to public transportation is improper as all evidence in the Record in this cause clearly establishes defendant Willard's actions in banning Plaintiff was an arbitrary and capricious decision based upon Plaintiff's exercise of his First Amendment rights to seek redress from a governmental agency of a grievance against a government official.

Dkt. # 142, at 4.  At the outset, the Court notes that no decisions of the Oklahoma Supreme Court were used in determining that plaintiff did not have a liberty interest in access to public transportation.  However, "[p]roperty interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."  Dkt. # 136, at 9 (citing <u>Board of Regents v. Roth</u>, 408 U.S. 564 (1972)).  Thus, courts look to state law to determine the proper scope of an individual's property interests, if any.  Oklahoma has not explicitly created a property right to public transportation.  And where state law does not explicitly create such a right, the Court must look to the degree to which the state has restrained an entity's discretion to withhold the right in question.  <u>Id.</u> (citing <u>Moore v. Middlebrook</u>, 96 F. App'x 634, 638 (10th Cir. 2004)).  Thus, it was proper for the Court to look to Oklahoma law to ascertain whether

discretion existed on the part of common carriers to deny service.  That Oklahoma courts have not interpreted the relevant statute in many years does not make manifest error of the Court's analysis. And plaintiff's argument that the Court was in error because "all evidence in the Record . . . clearly establishes" that the ban of plaintiff was an arbitrary and capricious action based on plaintiff's exercise of his First Amendment rights is meritless.[16]  There was no error in the Court's reliance on relevant Oklahoma law for the limited question of whether, under state law, plaintiff had a property interest in access to public transportation.

Brown also argues that, beyond reliance on "archaic" decisions, the Court erroneously interpreted Oklahoma law to conclude that he did not have a protected property interest in access to

---

[16]     As noted above, plaintiff's arguments based on retaliation were not raised at the time of summary judgment and would have been unsuccessful even if raised.

public transportation.[17]  Dkt. # 151, at 3.  In support, he points to a number of cases and statutes that require common carriers in Oklahoma to treat passengers safely and with a certain degree of civility.  Id. at 4.  Based on those sources, he states that "[i]mplicit in [the duty of the common carrier] would and should be under the common law common courtesy from the operator of the carrier."  Id.  He claims that because even if the initial termination of his bus privileges was attributable to his arguing with the bus driver, "it takes two people to argue, and . . . said bus driver was harassing and attempting to intimidate" him.  Id. at 4-5.  He therefore concludes that the "Court's conclusion [that] Oklahoma law gives no property interest to a citizen in access to public transportation is unfounded and without basis."  Id. at 4.  The Court does not find that plaintiff has pointed to any new law on this issue, or that there was any clear error in its previous conclusion that Oklahoma law does not create a legitimate claim of entitlement to access to MTTA buses.[18]  See Dkt. # 136, at 15.

---

[17]    He relies on Ward v. Housatonic Area Regional Transit Dist., 154 F. Supp. 2d 339 (D. Conn. 2001), in support of his argument that he had "an interest in the fare he paid on two separate occasions to board MTTA buses, which fare was never refunded to him, no matter how minute, or meager that fare may have been, as Plaintiff requested of Willard while being escorted off of the property for a refund of his ticket price, but Willard refused to return Plaintiff's money and told Plaintiff to get off the premises and not return."  Dkt. # 151, at 9-10.  Plaintiff has not previously raised any claim based on the failure to return his fare, and the Court will not consider this entirely new argument on a Rule 59(e) motion. Plaintiff's motion for new trial on that ground is denied.

[18]    Plaintiff argues that the Court erred in its refusal to follow Wayfield v. Town of Tisbury, 925 F. Supp. 880 (D. Mass. 1996), because that case was applicable and controlling under Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).  Logan, decided fourteen years before Wayfield, addresses property interests under the Due Process Clause generally, but otherwise bears no relation to Wayfield.  The Court previously considered plaintiff's arguments on Wayfield, and does not agree that it was bound by Logan to reach a conclusion other than that stated in its prior Opinion and Order.  Nor was there any manifest error in the decision not to follow Wayfield in resolving whether Oklahoma law creates a protected property interest in public transportation.

Brown claims that the Court's grant of summary judgment in favor of defendants on his equal protection claim was "contrary to law as all evidence submitted by defendants in opposition to said claim was tainted by false and perjured testimony of defendant Willard, and . . . Willard was the only witness proffered . . . to rebut [p]laintiff's allegations of racial discrimination against himself and disparate treatment of African Americans by MTTA agents and policies." Dkt. # 142, at 4. As stated, the Court does not find that Willard committed perjury, and does not find all of his testimony to be tainted by Brown's allegations of perjury. More importantly, the Court granted summary judgment on the equal protection claim based not on Willard's rebuttal of Brown's allegations, but because of the total lack of evidence in support of Brown's claims that he was treated differently than similarly situated individuals, or that such treatment was pursuant to a policy or custom on the part of MTTA. Dkt. # 136, at 17. Brown cites <u>Ward</u> in support of his equal protection claim, and makes sweeping allegations that Willard is a "'William 'Bull' Conner' clone," and that a jury, not the Court, should have determined the question of whether Willard acted with prejudice. He also attaches as exhibits to his motion two MTTA logs that document individuals subjected to bans of varying degrees by MTTA. Dkt. # 151, at 16-17. These exhibits were in the summary judgment record,[19] and arguments based on them are therefore improper on a Rule 59(e)

---

[19]    Indeed, the exhibits attached to plaintiff's Amended Brief in Support of Motion for New Trial (Dkt. # 151) retain their identifying information from use as exhibits to Defendants' Motion for Summary Judgment and Brief in Support (Dkt. # 94).

motion.[20] For the reasons stated in the prior Opinion and Order (Dkt. # 136), the Court does not find that plaintiff has raised a genuine issue of material fact as to disparate treatment. Plaintiff's motion for new trial is denied on all his asserted grounds.

## IV.

In addition to his motions for new trial, Brown filed a motion to sanction defense counsel. Dkt. ## 146, 148. Under Fed. R. Civ. P. 11(c)(2), a party may move for sanctions. However, before doing so, the party must comply with the Rule's "safe harbor" provision, which requires that a motion for sanctions be served on the proposed target of sanctions, but that the motion not be filed or presented to the court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2); see also Roth v. Green, 466 F.3d 1179, 1191-92 (10th Cir. 2006). There is no evidence that Brown complied with the safe harbor provision. He claims that he complied with the requirements of Rule 11 prior to filing his motion because he sent several warning letters to defense counsel. Dkt. # 146, at 1. However, the Tenth Circuit Court of Appeals has clearly stated that "nothing in [the safe harbor provision] suggests that a letter addressed to the alleged offending party

---

[20]    Even if considered, the arguments are unavailing. One of the exhibits "shows a white female who was banned by Willard." Dkt. # 151, at 11. Although "[n]o reason for the ban is stated," the ban "lasted for six months only." Id. Brown contends that this is a "classic example of disparate treatment, since [p]laintiff[,] a black male[,] was permanently banned[,]" and the same record documents another instance of a black male receiving a permanent ban. Id. These examples are irrelevant without information that would allow the Court to assess whether the individuals in question were similarly situated to Brown, and are insufficient to raise a genuine issue of material fact as to plaintiff's equal protection claim. Similarly, Brown alleges that a document showing that two Caucasian men received less than permanent bans from MTTA buses following a citation for public intoxication is evidence of disparate treatment. Id.; Dkt. # 151, at 17. However, again, he has provided no information about the circumstances surrounding the conduct of those men, and has failed to show how he was similarly situated to them.

will suffice to satisfy the safe harbor requirements.  Rather, the plain language of [the safe harbor provision] requires a copy of the actual motion for sanctions to be served on the person(s) accused of sanctionable behavior at least twenty-one days prior to the filing of that motion."  Roth, 466 F.3d at 1192.  "[W]arning letters . . . are supplemental to, and cannot be deemed an adequate substitute for, the service of the motion itself."  Id.

Moreover, because Rule 11(c) "requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted," and, therefore, "service of a sanctions motion after the district court has dismissed the claim or entered judgment . . . will be rejected."  Id. (internal quotations omitted); see also Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998)(holding that a party cannot wait until after summary judgment to move for sanctions, even if that party informally warned the offending party about the potential for Rule 11 sanctions).  Because there is no evidence that Brown complied with the procedural requirements of Rule 11, and because his motion is untimely, the Court has no discretion to consider the motion for sanctions.  See Roth, 466 F.3d at 1193.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for New Trial And/Or Motion to Re-Consider Order Denying Plaintiff's Motion for Summary Judgment (Dkt. # 142), Plaintiff's Motion to Impose Sanctions Against Defendant's Attorneys Pursuant to Rule 11 (Dkt. # 146), plaintiff's Motion to Re-Consider Previous Court Order Failing to Acknowledge Cause of Action for Retalaiton [sic] for the Exercise of Constitutional Rights (Dkt. # 147), Plaintiff's Amended Motion for New Trial (Dkt. # 150), and plaintiff's Amended Motion to Cite and Sanction Defendant Ray Willard for Perjury (Dkt.# 152) are **denied**.

**DATED** this 8th day of June, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT