## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

DAVID L. BROWN,            )
                               )
               **Plaintiff,**      )
                               )
v.                           )     Case No. 09-CV-0466-CVE-TLW
                               )
METROPOLITAN TULSA     )
TRANSIT AUTHORITY,      )
                               )
             **Defendant.**     )

## OPINION AND ORDER

Now before the Court are Plaintiff's Second and Renewed Request for the Issuance of a Preliminary Injunction (Dkt. # 194);[1] Defendant, Metropolitan Tulsa Transit Authority's Renewed Motion for Summary Judgment and Brief in Support (Dkt. # 200).[2] The issue before the Court is whether plaintiff David L. Brown was afforded procedural due process before he was permanently banned from riding busses operated by the Metropolitan Tulsa Transit Authority (MTTA).[3]

## I.

Brown was a frequent passenger on public transportation in the City of Tulsa, Oklahoma, and he regularly rode on busses operated by the MTTA. Brown was riding the bus sometime in 2005 or 2006, and he admits that he was having a "dirty conversation" with a female passenger.

---

[1]     At a status hearing on November 22, 2013, the Court converted plaintiff's motion for a preliminary injunction (Dkt. # 194) into a motion for a permanent injunction. Dkt. # 196.

[2]     Defendant requests an evidentiary hearing before the Court rules on the pending motions, and this request has been docketed as a separate motion (Dkt. # 206). The Court has reviewed the parties' filings and finds that a hearing is unnecessary, and defendant's motion for a hearing (Dkt. # 206) is denied.

[3]     To the extent that plaintiff substantively challenges the ban, the Court will not reach those arguments and the Court will consider only whether plaintiff received procedural due process before he was banned from riding the bus.

Dkt. # 200-1, at 13. The bus driver overheard the conversation and asked them to stop the conversation. Id. at 13. However, Brown and the female passenger continued their conversation. The bus driver stopped the bus, and she told Brown and the passenger to leave the bus. Id. at 14. MTTA rules prohibit the use of vulgar or offensive language on a city bus. Later in 2005 or 2006, Brown claims that he was waiting at a bus stop and the bus driver failed to stop the bus. Id. at 16. Brown made a complaint by telephone to the MTTA call center. Id. at 18. After the complaint was made, there was an incident at an MTTA bus station when a security guard, J.D. Eppler, believed that Brown was loitering and he asked Brown to produce an identification card, but Brown refused to comply with Eppler's request. Id. at 21-22. Brown became confrontational and he later called the Tulsa Police Department to complain that Eppler harassed him at the bus station. Id. at 22.

On April 5, 2007, Brown was late for a bus and tried to attract the bus driver's attention, but the bus driver did not stop to pick up Brown. Brown waited for another bus to come to the bus stop, and the same bus returned on its normal route. Id. at 24. Brown got on the bus and paid the fare, and he asked the bus driver why she did not stop earlier. Id. at 25. The bus driver told Brown that he was not at the bus stop, and she asked him to have a seat on the bus. Id. Brown engaged in disruptive behavior, and the bus driver told him to get off the bus. Brown refused to get off the bus and the bus driver called the police. Id. at 26. After about a minute, Brown started to leave the bus and he called the bus driver a "nappy haired whore." Dkt. # 200-7, at 3. Brown was not permitted to ride the bus for 30 days after the incident. Dkt. # 200-6, at 1. When Brown's 30 day suspension was completed, he began riding the bus again in May 2007 and he boarded a bus while he was intoxicated. Id.; Dkt. # 200-8, at 2. Brown denies that he was intoxicated but he does not dispute that he was drinking alcohol. Dkt. # 200-1, at 33. Brown was removed from the bus and he initiated

2

an altercation with Eppler and a Tulsa County Sheriff's deputy who was present at the bus stop. Brown was arrested and he subsequently pled guilty to charges of public intoxication, resisting an officer, and breach of the peace.  Dkt. # 200-9.

MTTA permanently banned Brown from riding the bus due to his repeated disruptive behavior.  Dkt. # 200-4, at 2; Dkt. # 200-7, at 15.  In July 2008, Brown confronted Eppler about the ban, and Eppler told Brown to call the MTTA call center to contest the ban.  Dkt. # 200-8, at 2. Brown did not contact the call center but, instead, he went to MTTA's office to orally make a complaint.  Dkt. # 200-1, at 39-41; Dkt. # 205, at 9.  Brown waited about five minutes and Ray Willard, the manager of security for MTTA, came out to speak with Brown.  Id. at 39-41. According to Brown, Willard refused to listen to Brown's complaints and he told Brown to leave. Dkt. # 200-1, at 41; Dkt. # 200-5, at 9.  Brown has made no further complaints to MTTA about his suspension from riding the bus.  However, he has continued to ride the bus when the bus driver does not recognize him or does not enforce the suspension.  Dkt. # 200-8, at 3.

The MTTA has issued transit rules for bus riders and certain conduct is prohibited on MTTA busses.  Customers are advised that "fighting, throwing of any object, pushing, rough or loud behavior, or vulgar language" is prohibited.  Dkt. # 200-3, at 31.  "Unnecessary conversation to the operator can be a distraction as well."  Id. at 31.  The transit rules plainly state that "[f]ailure to abide by these rules will result in the removal or expulsion of the individual or individuals from Tulsa Transit Property."  Id. at 31.  The transit rules provide a telephone number for customer comments or information.  Id. at 17.  MTTA also has a Customer and General Public Feedback Policy (the Policy), and the objectives of the Policy are to:

- Provide a higher level of customer service for transit customers;

- Document information received from customers and the general public to better serve the present and future transit needs of the customers and community;

- Timely respond to customer and the general public requests and issues; and,

- Evaluate transit policies and procedures while increasing efficiency, reliability, and service to our customers and the community.

Dkt. # 200-5, at 1. There is a process for making complaints alleging discrimination on the basis of race, color, or national origin, but the Policy does not specifically provide a procedure for contesting a suspension or ban. Id. at 3, 6.

In July 2009, Brown filed this case alleging that MTTA and other defendants violated his constitutional rights by banning him from the bus. Dkt. # 1. Defendants filed a motion for summary judgment and the motion was granted. The Court found that plaintiff had not established that he had a liberty or property interest and he was not entitled to minimal due process before his right to ride the bus could be taken away. Dkt. # 136. The Court also found no evidence that plaintiff was discriminated against because of his race, and he could not establish a violation of the Equal Protection Clause. Brown appealed and the Tenth Circuit Court of Appeals reversed and remanded the case for further proceedings on Brown's procedural due process claim. Dkt. # 172. The Tenth Circuit found that the MTTA had adopted rules that constrained its discretion to deny services, and these rules gave rise to legitimate claim of entitlement to access MTTA transportation as long as a patron complies with the rules. Id. at 9-10. The Tenth Circuit remanded the case for consideration of whether Brown received sufficient process. Id. at 11.

4

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

5

## III.

MTTA argues that plaintiff had notice of MTTA's complaint procedures and he could have contested his ban, but that he failed to take advantage of the procedures available to him. Dkt. # 200, at 21-22. Plaintiff responds that he was not given an opportunity to contest his ban from riding busses operated by the MTTA, and he seeks a permanent injunction allowing him to ride the bus and monetary damages. Dkt. # 194.

Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. A person alleging the denial of procedural due process must prove two elements: (1) "that he possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable;'" and (2) "that he was not 'afforded an appropriate level of process.'" Couture v. Board of Educ. of Albuquerque Public Schools, 535 F.3d 1243, 1256 (10th Cir. 2008). Property interests are not derived directly from the Constitution, but they "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Zwygart v. Board of County Commissioners of Jefferson County, Kansas, 483 F.3d 1086, 1093 (10th Cir. 2007). In this case, the Tenth Circuit has already determined that defendant had a property interest in riding the bus based on the MTTA's transit rules. Dkt. # 172, at 10 ("Because the MTTA has limited its own discretion to ban riders to a set of clearly defined circumstances, Brown has a 'legitimate claim of entitlement' to access to MTTA transportation so long as he complies with its rules and regulations, and, hence, a protected property interest under the Due Process Clause of the Fourteenth Amendment").

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Lawrence v. Reed</u>, 406 F.3d 1224, 1233 (10th Cir. 2005).  To determine how much process is due, a court must consider three factors: "(1) the private interests that will be affected by the official action; (2) the risk of erroneous deprivation; and (3) the burden on the government from additional procedural requirements."  <u>Couture</u>, 535 F.3d at 1258. Due process is a flexible concept that "calls for such procedural protections as the particular situation demands," and a hearing "need not necessarily provide all, or even most, of the protections afforded by a trial." <u>Guttman v. Khalsa</u>, 669 F.3d 1101, 1114 (10th Cir. 2012).  In most cases, the Due Process Clause requires "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." <u>Riggins v. Goodman</u>, 572 F.3d 1101, 1108 (10th Cir. 2009).  Pre-deprivation process may be omitted in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." <u>Elwell v. Byers</u>, 699 F.3d 1208, 1217 (10th Cir. 2012).  When matters of public health or safety are concerned, state actors may be required to act quickly and due process requires only a postdeprivation opportunity to challenge the state action.  <u>Camuglia v. The City of Albuquerque</u>, 448 F.3d 1214, 1221 (10th Cir. 2006).

MTTA has included a copy of its transit rules as part of the summary judgment record.  Dkt. # 200-3.  MTTA expressly prohibits "[f]ighting, throwing of any objects, pulling, rough, or loud behavior, or vulgar language." <u>Id.</u> at 15.  "Failure to abide by these rules will result in the removal or expulsion of the individual or individuals from Tulsa Transit Property." <u>Id.</u> The rules do not state a procedure for banning a person from MTTA transportation or for contesting a suspension or ban.

7

There is a list of telephone numbers but the transit rules do not provide a specific number for contesting a suspension. Id. at 2. Willard states that it is:

> MTTA's policy that when an individual is banned from MTTA bus use, that case is reviewed individually to determine if suspension of services will be lifted, temporarily suspended or modified to include some services or station access. The person receiving the suspension is advised to contact the Manager of Security to initiate the process for review to remove or modify the suspension. The person's case is reviewed with the officer(s) that have had contact and reported on the case(s) as well as other activity that has required contact with security and/or law enforcement.

Dkt. # 200-4, at 2-3.

In this case, the evidence is clear that plaintiff did not receive a pre-deprivation hearing before he was banned from riding MTTA busses, and MTTA argues that plaintiff's repeated disruptive conduct required it to take quick action to protect other customers who rode the bus. Dkt. # 200-4, at 2. Plaintiff does not argue that a pre-deprivation hearing was required but, instead, he states that he was "not allowed any type of hearing after the arbitrary ban . . . ." Dkt. # 205, at 2. The evidence shows that plaintiff was ordered to leave a bus in April 2007, and the bus driver was required to call the police for assistance in removing plaintiff from the bus. While waiting for the police, plaintiff called the bus driver a "nappy haired whore." Plaintiff received a 30 day suspension following the incident. In May 2007, plaintiff was riding the bus while intoxicated and he was removed from the bus. After he was removed from the bus, plaintiff started an altercation with a Tulsa County Sheriff's deputy and he was arrested on charges of public intoxication, resisting an officer, and breach of the peace. Based on these facts, it was reasonable for MTTA to act quickly to prevent plaintiff from riding the bus, and the Court does not find that a pre-deprivation hearing was required.

Defendant argues that it provided sufficient post-deprivation remedies to plaintiff after banning him from the bus. The decision to ban plaintiff from riding the bus was made in May 2007, and defendant claims that plaintiff was aware of the ban. Dkt. # 200, at 18. However, there is no evidence in the record that any attempt was made to give plaintiff formal notice. The only evidence establishing that plaintiff received notice of his ban is that an MTTA security guard, Eppler, told plaintiff in July 2008 that he was banned and that plaintiff could contact the MTTA call center to contest the ban. Dkt. # 200-8. The Policy provides that certain types of complaints may be made to the call center, but the Policy does not state that the call center has any process for hearing challenges to a ban or suspension. Dkt. # 200-5. In August 2008, plaintiff went to MTTA's office to contest the ban and he asked to speak to someone about the ban. Willard came out to speak to plaintiff, and the only evidence in the record is that Willard told plaintiff to leave without hearing any argument from plaintiff. Dkt. # 205, at 9. Defendant argues that plaintiff was aware of the rules of conduct for riding the bus and he repeatedly engaged in disruptive conduct and, even if more process had been provided to plaintiff, MTTA would not changed its decision to ban plaintiff from riding the bus. Dkt. # 200-4, at. 3.

Considering the three factors stated in <u>Couture</u>, the Court finds that defendant failed to provide plaintiff sufficient procedures to challenge his ban, and plaintiff's rights under the Due Process Clause were denied. The first factor for the Court to consider is the private interest at issue. Defendant argues that plaintiff has a relatively minimal private interest in riding the bus, because he continued to earn income after the ban was imposed and he continued to ride the bus even with the ban. Dkt. # 200, at 18. However, plaintiff testified at his deposition that it was difficult for him to maintain employment without access to public transportation. Dkt. # 200-1. Even if the ban did

not entirely deprive plaintiff of his ability to earn a livelihood, the Court finds that plaintiff had a substantial interest in maintaining employment and there is evidence suggesting that the ban interfered with his ability to work. While plaintiff's conduct may have necessitated quick action to protect other patrons, he had a significant private interest in receiving some type of post-deprivation procedure in which he could have challenged the ban. The second factor (risk of erroneous deprivation) also weighs in favor of providing some type of formal procedure to contest a ban from MTTA busses. This factor requires the Court to consider the amount of process actually provided and whether the defendant took steps to minimize the risk of an erroneous deprivation of the plaintiff's private interest. Ward v. Anderson, 494 F.3d 929 (10th Cir. 2007). In this case, the evidence shows that MTTA made a decision to ban plaintiff from the bus, but it is unclear who was involved in making the decision or what evidence was considered. Plaintiff was not formally advised of the ban or given a meaningful opportunity to contest the ban. In fact, it does not appear that MTTA took any steps to provide a post-deprivation hearing to plaintiff, and there was a substantial risk of erroneous deprivation of plaintiff's private interest. The third factor (burden on the government) does not weigh against having some type of formal procedure in place to allow a MTTA customer to contest a suspension or ban. At best, MTTA provides an informal procedure for an aggrieved customer to challenge a ban, but there is no evidence that MTTA gives actual notice of the ban to a customer or that it has rules in place to govern a customer's attempt to challenge a ban. The Court acknowledges that many MTTA customers may not have a permanent address where notice can be given, and this makes the process of providing notice more difficult. Even with this consideration, MTTA has not offered any evidence showing that it attempted to give plaintiff actual notice of the ban or that it provided any meaningful post-deprivation opportunity to

10

challenge the ban.  The informal procedures allegedly provided by MTTA to challenge a ban were not sufficient under the circumstances, and plaintiff has established a violation of his constitutional rights.

Defendant argues that plaintiff waived his right to a post-deprivation hearing, because he did not actually request a hearing after learning of the ban.  The Court has found no evidence that MTTA actually attempted to provide plaintiff notice of the ban, and it appears that plaintiff learned of the ban after talking to Eppler about a year after the ban was imposed.  When plaintiff went to MTTA's office, he claims that he was turned away without any type of hearing.  Under the circumstances, the Court does not find that plaintiff waived his right to procedural due process. After the case is concluded and some type of hearing is provided, plaintiff is advised that he may waive his right to procedural due process by failing to take advantage of the process offered to him. Farhat v. Jopke, 370 F.3d 580 (6th Cir. 2004); Krentz v. Robertson, 228 F.3d 897, 904 (8th Cir. 2000).  However, since no formal post-deprivation procedure was in place, the Court does not find that plaintiff could have waived his right to post-deprivation process to challenge the ban.

Plaintiff has established that his rights under the Due Process Clause were violated and the Court must determine what remedy is appropriate to redress the constitutional violation.  "The deprivation of constitutional rights, standing alone, does not entitle a plaintiff to general damages." Lippoldt v. Cole, 468 F.3d 1204, 1220 (10th Cir. 2006).  Nominal damages are available without a showing of compensable injury.  Id.  Defendant argues that plaintiff has failed to establish that he suffered actual injury from the ban, because he has continued to ride the bus after the ban was imposed.  Dkt. # 24.  Defendant also claims that the ban would likely have remained in place even if more procedure had been provided to plaintiff.  Id.  Plaintiff has wholly failed to respond to these

arguments in his response to defendant's motion for summary judgment.  Although plaintiff's deposition testimony establishes that he lost some opportunity for employment, the Court would be speculating if it awarded compensatory damages to plaintiff based only on his somewhat vague deposition testimony.  Plaintiff was aware that defendant challenged his right to recover monetary damages and he has failed to make any attempt to show that such damages would be appropriate.[4] In light of the constitutional violation found by the Court, plaintiff should be awarded nominal damages only.  Defendant also argues that any type of injunctive relief should also be denied, because plaintiff has not shown that he has suffered an irreparable injury.  Dkt. # 200, at 26.  A party seeking a permanent injunction has the burden to show:

> (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

Fisher v. Oklahoma Health Care Authority, 335 F.3d 1175, 1180 (10th Cir. 2003).  The Court has found that a constitutional violation occurred, and plaintiff has established success on the merits. The Court has also found that plaintiff has a significant private interest in riding the bus, and monetary damages would be unlikely to remedy the constitutional violation found by the Court.  See Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1259 (10th Cir. 2003) (irreparable harm present when there is a significant risk that money damages will not adequately compensate the plaintiff).  In particular, the injury alleged by plaintiff is interference with his right to ride the bus

---

[4]     The Court notes that plaintiff has requested a hearing on defendant's motion for summary judgment, but he does not specify what issues would require a hearing.  In any event, plaintiff's request for a hearing does not satisfy his obligation to properly respond to a motion for summary judgment, and the Court does not find that it necessary to set a hearing to determine the appropriate remedy in this case.

12

and he claims that this prospectively interferes with his right to earn a living, and money damages would not reduce the risk of future injury to plaintiff if he is not permitted to challenge the ban imposed by the MTTA.  As to the third factor for issuance of a preliminary objection, the threatened injury of not providing plaintiff some procedure to challenge his suspension from riding MTTA busses outweighs the minimal  inconvenience to defendant in providing some type of hearing to plaintiff to allow him to challenge his ban.  As to the public interest factor, the Court notes that plaintiff previously engaged in disruptive conduct while riding the bus, and there is a public interest in ensuring the safety of other passengers on the bus.  However, this public interest does not weigh against providing plaintiff procedural due process to challenge the ban.  Plaintiff is advised that nothing in this Opinion and Order should be construed as a finding that plaintiff's right to ride the bus should be restored.  Instead, the claim before the Court is limited to whether plaintiff received procedural due process, and the Court has found that plaintiff should have been afforded some post-deprivation procedure to challenge his ban from the bus.  The Court will enter judgment and a permanent injunction requiring that MTTA provide plaintiff a hearing to determine if the ban should remain in place, and plaintiff must be permitted to make arguments and present evidence in support of his request to rescind the ban.[5]

## IV.

On appeal, the Tenth Circuit found that defendant was incarcerated when the notice of appeal was filed, and it found that the provisions of the Prisoner Litigation Reform Act, 28 U.S.C. § 1915

---

[5]     Plaintiff is further advised that, during court hearings, he had a tendency to engage in disruptive behavior and his court filings contain numerous instances of unsupported accusations and name calling directed at defendants.  He should refrain from such behavior at the post-deprivation hearing and, if plaintiff engages in disruptive behavior, MTTA may consider this as evidence that the ban should remain in place.

(PLRA) applied to plaintiff's request to proceed in forma pauperis on appeal. Dkt. # 172, at 15-16. The Tenth Circuit determined that plaintiff should have paid an initial partial appellate filing fee and any additional monthly payments while he was incarcerated, but it directed this Court to calculate the amount owed by plaintiff. The documents submitted by plaintiff shows that he had a balance of $191.54 in his prison account as of July 12, 2011. Under the PLRA, defendant was obligated to pay twenty percent of his account balance, or $38.30, and there is no evidence that plaintiff subsequently received income in his prison account that would require additional payments. However, as noted by the Tenth Circuit, plaintiff remains obligated to pay the full amount of his appellate filing fee[6] in the same manner as any other litigant who is permitted to proceed in forma pauperis.

IT IS THEREFORE ORDERED that plaintiff's motion for a permanent injunction (Dkt. # 194) is **granted**, and Defendant, Metropolitan Tulsa Transit Authority's Renewed Motion for Summary Judgment and Brief in Support (Dkt. # 200) is **denied**. A separate judgment and permanent injunction is entered herewith.

IT IS FURTHER ORDERED that defendant's motion for a hearing (Dkt. # 206) is **denied**.

IT IS FURTHER ORDERED that plaintiff is obligated to pay $38.30 immediately to the Court Clerk in satisfaction of his obligations under the PLRA. In addition, plaintiff shall pay the full amount of the balance of the appellate filing fee ($411.70) in monthly installments of $10 , starting in May 2014 until paid in full.

**DATED** this 24th day of April, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[6]     The appellate filing fee when plaintiff filed his notice of appeal was $450. The appellate filing fee has since increased to $505, but plaintiff is obligated to pay only up to the $450 filing fee in effect when he initiated his appeal.